ALEXANDER FRANCESCONI vs. PLANNING BOARD OF
WAKEFIELD.

Middlesex.    January 10, 1963. — February 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Subdivision Control. Equity Pleading and Practice, Stipulation, Rehearing.*

A proposed dead-end street in a subdivision was "permanently designed
as such" within a regulation of the local planning board even if it might
not remain dead-end in the event that adjoining land not controlled by
the subdivider were subdivided in the future. [391]

Under G. L. c. 41, §§ 81Q, 81M, a municipal planning board was authorized to adopt a regulation that "Dead-end streets, permanently designed
as such, shall not be longer than five hundred (500) feet unless, in the
opinion of the board, a greater length is necessitated by topography or
other local conditions." [391, 393]

Where a municipal planning board disapproved a preliminary plan for a
proposed subdivision of land for the reason that a dead-end street
thereon violated a length limitation for dead-end streets in the board's
regulations, the subdivider brought a suit in equity against the board by
way of appeal under G. L. c. 41, § 81BB, the parties stipulated that the
plaintiff's "proposed subdivision is the only practical manner in which
his land can be subdivided," and the final decree declared that the board
did not exceed its authority, but the record on appeal from that decree
was too meager to enable this court to determine whether the regulation
was unconstitutional as applied to the plaintiff's land, the stipulation
was discharged and the decree reversed to permit fuller development of
the facts on rehearing in the Superior Court. [393–394]

BILL IN EQUITY filed in the Superior Court on March 6,
1961.

The suit was heard by *Lurie*, J.

*Mario Misci* for the plaintiff.

*Francis C. McGrath*, Town Counsel, for the defendant.

WILKINS, C.J.    The plaintiff, on December 20, 1960, submitted to the defendant planning board a preliminary plan
for a proposed subdivision of his land and extension of
Sycamore Road, a dead-end street which is not a public
way, in Wakefield.   G. L. c. 41, § 81S (as amended through

St. 1959, c. 189).  Following disapproval of the plan on February 15, 1961, the plaintiff brought this bill in equity by way of appeal.  G. L. c. 41, § 81BB (as amended through St. 1957, c. 199, § 2).  From a final decree in the Superior Court declaring that the planning board did not exceed its authority in disapproving the plan, the plaintiff appeals.

The board gave as a reason for disapproval that "the plan violates Sec. IV, A, 4a, of the rules and regulations governing the subdivision of land in Wakefield, Mass. in that it exceeds the 500 foot limitation for dead end streets by extending to a length of 1899.17 feet."  Section IV, A, 4a, reads, "Dead-end streets, permanently designed as such, shall not be longer than five hundred (500) feet unless, in the opinion of the board, a greater length is necessitated by topography or other local conditions."

The sole issue before us is whether the rule is unconstitutional as applied to the plaintiff and his land.  It was stipulated in the Superior Court that the plaintiff's "proposed subdivision is the only practical manner in which his land can be subdivided."  The judge found that the proposed plan set out a dead-end street 1899.17 feet in length; and that the plaintiff acquired the land in 1954 prior to the adoption by the town of the subdivision control law.  The judge rightly rejected the plaintiff's contention that Sycamore Road is not a dead-end street "permanently designed as such," since in the event of a future subdivision of the adjoining land it would not necessarily remain a dead end. He correctly pointed out that this argument seeks to anticipate the use of land over which the plaintiff has no control, and upheld the board's determination that the length of the dead end street was not necessitated by topography or other local conditions.  In his findings and rulings he stated: "The planning board is charged with the duty of determining the effect of such problems as adequate access, congestion in ways, traffic and fire control, snow clearance, to mention a few.  Even if the proposed subdivision plan and profile is the only practicable way of subdividing the land, this does not, in my opinion, automatically preclude the planning board from insisting upon compliance with its rules and regulations."

Francesconi *v.* Planning Board of Wakefield.

The planning board is required to adopt reasonable rules and regulations by G. L. c. 41, § 81Q (as amended through St. 1960, c. 417). Among other things, such rules "shall set forth the requirements of the board with respect to the location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services therein, which requirements shall be established in such manner as to carry out the purposes of the subdivision control law as set forth in section eighty-one M. . . . In establishing such requirements regarding ways, due regard shall be paid to the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein, and to adjustment of the requirements accordingly. Such rules and regulations may set forth a requirement that a turnaround be provided at the end of the approved portion of a way which does not connect with another way."

Section 81M of the subdivision control law (as amended through St. 1957, c. 265), entitled "Declaration of policy," reads in part: "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns . . . by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions . . . . The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision; and for co-ordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located

and with the ways in neighboring subdivisions." See *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 480–481.

As a general proposition, it cannot be soundly denied that the planning board was authorized to adopt the rule for the purposes set forth in § 81M, some of which were enumerated by the trial judge. The reference to regulation of "width" in § 81Q is not a simultaneous negation of the authority to regulate length, particularly where "location" may be regulated. Nor does the permissive provision in § 81Q for a turnaround requirement have a similar restrictive effect.

The meagerness of the record is a serious handicap in considering the question whether the enforcement of the rule is violative of the plaintiff's constitutional rights. Certain exact measurements which would be helpful to know must be puzzled out from the plans certified as exhibits. We were informed at the arguments that the plan submitted by the plaintiff shows that Sycamore Road, which on the west adjoins Montrose Avenue, a public way, already exists on the ground for 1029.17 feet of the total proposed length of 1899.17 feet. This means that the planning board on a previous occasion in approving a subdivision plan did not insist upon the 500 foot limitation. An inspection of the same plan seems to disclose that the proposed extension of the street would be 40 feet wide; that at the present easterly terminus of Sycamore Road the plaintiff's land is 350 feet wide; that the land has a depth of 870 feet; and that the proposed subdivision provides a turnaround having a 50 foot radius at the eastern end of the proposed extension.

We were also informed at the arguments that the plaintiff's land is in a single residence zone. If the stipulation that the proposed subdivision is the only practical manner in which the land can be subdivided is to stand, this means that a tract of nearly seven acres could serve for only one dwelling house.[1] We are uninformed as to the nature of the terrain, but from what little we can learn from the rec-

---

[1] The zoning by-law provides that in "a single residence district no building or premises shall be erected, altered, or used for any other purpose than" single family detached dwelling, small club, church, school, farm, garden, nursery, greenhouse, playground, railroad station, and doctors' offices.

ord it would seem that a double street with a middle strip could be laid out which would provide for traffic in both directions. The size or number of the lots, of course, would be affected. While this would not eliminate the dead-end aspect, it would meet many of the town's objections.

We are unwilling to go further on this record. We discharge the stipulation. *Loring* v. *Mercier,* 318 Mass. 599. To permit fuller development of the facts in the court below, the decree should be reversed.

*So ordered.*