CRITTENTON HASTINGS HOUSE OF THE FLORENCE CRITTENTON
LEAGUE *vs*. BOARD OF APPEAL OF BOSTON.

No. 87-4.

Suffolk.  September 11, 1987. — April 27, 1988.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Zoning,* Special permit; Board of appeals: decision. *Practice, Civil,* Stipu-
lation, Zoning appeal. *Boston.*

On appeal from a decision of the board of appeal of Boston denying the plain-
    tiff's application for a conditional use permit, the judge erred in vacating
    the parties' stipulation to certain facts for trial on account of its incon-
    sistency with the board's findings of fact, where the stipulation was the
    product of careful negotiations between the parties following two eviden-
    tiary hearings before the board, where the plaintiff refrained from calling
    witnesses at trial in reliance on the stipulation and where, in any event,
    the board's findings could carry no evidentiary weight at the de novo
    hearing in the Superior Court. [713]
On an appeal from a decision of the board of appeal of Boston denying an
    application for a conditional use permit, the judge's findings of fact
    upon which he affirmed the board's decision were clearly erroneous in
    light of the evidence and stipulations presented to him at a de novo
    hearing and, in the circumstances, this court concluded that judgment
    should be entered directing the board to issue the permit. [714-715]


CIVIL ACTION commenced in the Superior Court Department
on July 24, 1985.

The case was heard by *George C. Keady, Jr.,* J.

*Margaret H. Marshall* (*John F. Bok* with her) for the plain-
tiff.

*Dianne E. Taylor,* Assistant Corporation Counsel, for the
defendant.

PERRETTA, J. Seeking to operate a day care center from an
underutilized building on its Brighton property, the plaintiff
sought a conditional use permit. The zoning administrator's
denial of the permit was affirmed by the board of appeal of Bos-

ton, and the plaintiff appealed to the Superior Court pursuant to St. 1956, c. 665, § 11. Prior to trial, the parties entered into a stipulation concerning certain facts and exhibits.[1] After the close of the evidence, the judge remanded the matter to the board with an order that it make amplified findings of fact in support of its decision. The board issued a revised decision upon which the judge, who had retained jurisdiction, heard arguments of the parties but took no further evidence in view of the prior "full hearing." After hearing argument on the board's decision after remand, the judge vacated the parties' stipulation because he found that certain stipulated facts were inconsistent with the facts found by the board as well as "material" evidence before him. He then concluded that the board's decision was supported by the evidence, and he affirmed the denial of the conditional use permit. We conclude that the judge was in error in vacating the parties' stipulation and that the board's decision was not based upon any valid reason. We reverse.

I. *Background.*

Because we conclude that the board was not justified in denying the plaintiff's application, we set out the facts in detail. The plaintiff is a nonprofit corporation with a place of business at 10 Perthshire Road, Brighton. Perthshire Road runs up and down a steep hill. The plaintiff's main building was constructed on the hill with the main door of that building facing out toward a campus and not the street. The chapel, the site of the proposed day care center, is an ell off the far end of the main building which extends near to the edge of a drastic drop or slope in the hill. Although the chapel adjoins the main building, it is separate from it.

In addition to maintaining a maternity home, the plaintiff provides a multitude of services (such as family planning,

---

[1] The following seven exhibits were attached to the stipulation: (1) a site plan; (2) the zoning administrator's denial of the plaintiff's application; (3) the plaintiff's appeal to the board; (4) the board's decision; (5) a recommendation of approval of the application from the Boston Redevelopment Authority (BRA); (6) a letter from the commissioner of the Boston traffic and parking department; and (7) a letter from the district chief of the Boston fire department to the board.

family and group counseling, first trimester abortions, prenatal care, and classes in child birth, child care, and nutrition) as well as offering community-based programs (social and recreational activities). In late January, 1985, the plaintiff applied for a conditional use permit in order that it might develop a day care center in its underutilized chapel. A permit is required because the premises are situated in a district zoned for residential use. The zoning administrator denied the application, the plaintiff filed an appeal, and the board scheduled a hearing for April 30, 1985.

In preparation for the hearing, the plaintiff held a meeting on its premises on April 16. Abutters and neighborhood residents, about sixty in number, attended the meeting and voiced concerns about parking problems and traffic congestion. To answer these concerns, the plaintiff requested the commissioner of the traffic and parking department of Boston, Lisa G. Chapnick, to conduct a study of those issues. On April 24, Chapnick wrote to the plaintiff (see note 1, *supra*) stating that her analysis of the "street system in the immediate vicinity . . . as it relates to the possible impacts on the neighborhood resulting from the establishment of the proposed day care center" was that the additional traffic would have no adverse effect on traffic or safety in general. She further stated that parking concerns were "negligible at best." The plaintiff sent copies of Chapnick's study to all those who had attended the April 16 meeting along with a cover letter describing specific measures it intended to take on its own initiative to prevent any possible parking or traffic problem.

At the hearing on April 30, the board heard testimony in favor of and in opposition to the granting of the permit. A letter was submitted to the board from the Boston Redevelopment Authority (BRA) recommending approval of the application because the plaintiff's proposed day care center "will provide the only infant-toddler facility in the Allston-Brighton area." The Boston fire department voiced concern about public safety due to the lack of properly maintained fire lanes and poor parking facilities. The board deferred any decision on the appeal until the issues raised by the fire department were investigated.

Thereafter, the chief of the fire station which services the neighborhood, John Ellis, took a walking tour of the premises, pointed out areas of concern, and made suggestions for improvements. The plaintiff, in response to those concerns and suggestions, restructured its parking lot, limited parking availability so as to facilitate access to the rear of the building, and proposed to construct a fenced-off fire lane to the rear of the chapel. On two occasions, a fire truck went to the premises without prior notice to the plaintiff to test the adequacy of the changes made by the plaintiff. On May 31, Ellis wrote to the board describing what changes had been made to date and what additional modifications were intended before the day care center would open its doors. As a result of these modifications and plans, Ellis advised: "My concerns for public safety have been addressed by the [plaintiff] and I hereby withdraw opposition to their license."[2]

A second hearing before the board was held on June 4. In the interim, numerous letters and petitions were sent to the board. The letters in favor of the plaintiff's application spoke to the need for a day care center in the Brighton area and to the satisfaction with the plaintiff's remedial measures concerning traffic and parking issues. There were also letters and a petition with many signatures stating opposition to the permit but without giving reasons. Others voiced the opinion that it was hypocritical, inappropriate, or troublesome to have a day care center on the same premises with a clinic performing a high number of abortions. One letter indicated that the concerns over traffic would be removed if the abortion clinic were replaced by the day care center, but any additional traffic would only exacerbate the problem presently existing at the clinic, which was already "bend[ing] the law to the breaking point . . . [in that] second trimester abortions were being performed."

---

[2] Specifically, to provide access from the main entrance on Perthshire Road, the plaintiff established a fire lane in its parking lot. The lane extends the full length of the parking lot and ends on the south side of the day care center. If the permit were to be allowed, the plaintiff intends to construct a fire lane running from Adair Road (which runs along the back side of the campus to within about 100 feet from the farthest corner of the chapel) to the day care center.

When the board affirmed the denial of the permit by the zoning administrator,[3] the plaintiff appealed to the Superior Court. Thereafter, the parties stipulated to twenty-six facts in support of three "conclusions." As set out in the stipulation, these "conclusions" read: "1. There will be no serious hazard to vehicles or pedestrians from the use of the former chapel as a day-care center. (Section 6-3[c], Boston Zoning Code). 2. No nuisance will be created by the use of the former chapel as a day-care center. (Section 6-3[d], Boston Zoning Code). 3. This appeal does not relate to a Development Impact Project as defined in Section 26-2 of the Boston Zoning Code (Section 6-3[f] . . .)."[4] This document was filed in court some four months after the board's original decision and almost one month prior to trial. The stipulations and attached exhibits were put in evidence without objection by the board.

---

[3] The pertinent paragraph of the board's original decision is: "The Board is of the opinion that the appellant did not advance sufficient reasons to satisfy the Board that all the conditions under which the Board may grant a Conditional Use as specified in Article 6, Section 6-3 of the Zoning Code [see note 4, *infra*] have not [*sic*] been met, nor to cause the Board to come to a conclusion that this is a specific case where a literal enforcement of the Act involves a substantial hardship upon the appellant as well as upon the premises, nor where desirable relief may be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of the Zoning Act."

[4] Article 6, § 6-3, of the Boston Zoning Code (as amended December 29, 1983), reads: "The Board of Appeal shall grant any such appeal only if it finds that all of the following conditions are met:

(a) the specific site is an appropriate location for such use or, in the case of a substitute nonconforming use under Section 9-2, such substitute nonconforming use will not be more objectionable nor more detrimental to the neighborhood than the nonconforming use for which it is being substituted;

(b) the use will not adversely affect the neighborhood;

(c) there will be no serious hazard to vehicles or pedestrians from the use;

(d) no nuisance will be created by the use;

(e) adequate and appropriate facilities will be provided for the proper operation of the use; and

(f) If such appeal relates to a Development Impact Project as defined in Section 26-2, the applicant shall have complied with the Development Impact Project Requirements, set forth in Section 26-3."

In addition to the stipulations, the plaintiff presented numerous witnesses who testified to the need for day care services in the Allston-Brighton area. Experts in the field of day care centers and planning spoke to the suitability of the site for children. The renovations to the physical structure either comported with or exceeded day care standards set out in regulations promulgated by the Massachusetts Office for Children. Further, the plaintiff presented evidence that if the permit were granted, an outdoor play area was to be constructed by flattening out a large area directly beyond one of the chapel doors. The area would then be fenced in, and the children would have a safe, natural, outside play space.

After the plaintiff concluded its presentation of evidence, counsel for the board announced its intention to introduce evidence on two points in seeming contradiction of paragraphs fourteen and twenty of the stipulation pertaining to traffic and parking conditions.[5] As we understand the purported distinction made by counsel between the stipulation and her position at trial, it is as follows. Her purpose was not to contradict the stipulation by attempting to show that allowance of the permit would *create* traffic and parking concerns. Rather, the board wished to demonstrate that such concerns exist even in the absence of a day care center, thereby making the site inappropriate and detrimental to the neighborhood. The plaintiff objected, noting that the stipulations had been prepared after "careful negotiations" and a site review by counsel for the board and that in reliance upon the stipulations the plaintiff had not called witnesses to testify on these concerns. The judge concluded that the board could offer evidence to show hazardous conditions as to vehicles and pedestrians but that it could not offer evidence concerning parking conditions.

An abutter (a retired captain of a firehouse) testified that the road leading to the main entrance of the plaintiff's property,

---

[5] As stipulated to by the parties, those paragraphs provide:

"14. The proposed day-care center will not create a traffic hazard."

"20. There is adequate parking at Crittenton to accommodate the proposed day-care center as well as the other facilities at Crittenton."

Perthshire Street, was steep and hazardous, especially in the winter. One winter he slid down the hill in his car, and more than ten years ago a truck had problems with its brakes, resulting in a serious accident. In his opinion, a fire truck could not make a turnaround on Adair Street. Additionally, he believed that the building itself, the chapel, was against the fire code. Although he did not know for a fact whether water pressure problems exist in the area, he believed that, under certain conditions, the pressure "could" drop.

On cross-examination, the witness recited the reasons for his opposition to the day care center: the center should not be located in a residential area, the chapel building was inadequate, and children should not play on a steep hill.

As its final witness the board presented the owner (but not the resident) of the house directly across the street from the plaintiff's main entrance. The witness testified that she had moved from the area because of the "aggravation" caused by the plaintiff's facilities and because of the steepness of the street. On one occasion and for a reason never discovered, her car had gone out of control on the hill.

In the past, the witness had complained to the plaintiff about its "black industrial smoke" and its failure to empty its dumpster more frequently. Further, much early morning noise was caused by trucks making deliveries to the plaintiff's facilities. The witness was also of the opinion that the outside play area (as it presently exists) would be unsafe for children.

Upon remand for a "more adequate statement of its findings of fact and conclusions of law," the board concluded that at the prior hearings the plaintiff had failed to show that conditions (a), (b), and (e) of § 6-3 had been satisfied. As to subparagraphs (a) and (e), the board found that the outdoor play area presented safety concerns in that the area is "heavily wooded and goes back approximately two hundred yards where it ends at a retaining wall overlooking a large housing project. This area is not level but rather drops off drastically into a very steep slope."

Concerns relative to fire safety were also found. The board noted that a fire truck would have difficulty turning into the fire lane behind the day care center. Further, the truck would

have to back out of the premises from the fire lane as "there would not be sufficient room to turn around." Water pressure problems were found to exist in the area.

Because of the steep roads leading to the plaintiff's premises, winter driving conditions are difficult. Although the plaintiff might try to alleviate "certain existing safety problems at the site . . . other safety problems are not resolvable due to the topography at or near the site." The board concluded that the site was "not an appropriate location for a day care center and that adequate and appropriate facilities cannot be provided for the operation of the use."

Turning to subparagraph (c), the board found that "there are problems in the neighborhood that will be created or exacerbated by the proposed use, causing an adverse effect to the neighborhood." These "problems" were identified as traffic and parking. The board found that "[n]o adequate traffic or parking study was done to satisfy the board that the proposed day care center would have no effect or a negligible effect on the already problematical situation in the neighborhood."

Upon receipt of the board's decision, the judge found that the findings therein contained, as well as some of the "material" evidence previously presented before him, were contradicted by the parties' stipulations. To the extent that the stipulations were "inconsistent" with the findings and evidence, they were vacated by the judge.

On the record thus comprised, the judge next went on to "determine whether the plaintiff has demonstrated at the trial that the board had based its decision on a legally untenable ground, or was unreasonable, whimsical, capricious or arbitrary in its decision." The judge concluded that "there is evidence to support all the findings" of the board.

II. *Discussion.*

"The task of the Superior Court was to determine whether this applicant for a special permit was able to demonstrate at a de novo hearing (*Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 [1972]) that 'the board has based its decision on a "legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary."'' *Humble Oil & Refining*

*Co.* v. *Board of Appeals of Amherst,* 360 Mass. 604, 605 (1971), quoting from *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 639 (1970), and citing *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277 (1969)." *S. Volpe & Co.* v. *Board of Appeals of Wareham,* 4 Mass. App. Ct. 357, 359 (1976). In light of the issue before the judge, we see no error (as the plaintiff alleges) in the judge's decision to remand the matter to the board to state more fully the reasons for its action. See *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 717-719 (1974).

Our task is different. Before us the question is "whether on the evidence the judge was justified in sustaining the denial by the board of the plaintiff's application." *Mahoney* v. *Board of Appeals of Winchester,* 344 Mass. 598, 600 (1962), citing *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 559-560 (1954), and *Lawrence* v. *Board of Appeals of Lynn,* 336 Mass. 87, 90 (1957). The threshold question is whether the parties' stipulation was erroneously discharged.

Both appellate and trial courts have the power to "vacate a stipulation made by the parties if it is deemed improvident or not conducive to justice." *Loring* v. *Mercier,* 318 Mass. 599, 601 (1945). See, e.g., *Francesconi* v. *Planning Bd. of Wakefield,* 345 Mass. 390, 393-394 (1963) (because the record provided too meager a basis to permit the court to determine whether the regulation there in question was unconstitutional in its application, the stipulation was discharged and the matter remanded to the trial court "[t]o permit fuller development of the facts"); *Commonwealth* v. *Clarke,* 350 Mass. 721, 722 (1966) (stipulation set aside and matter remanded to the trial court because of omitted facts deemed necessary to decide the question on report); *Woods* v. *State Bd. of Parole,* 351 Mass. 556, 560 (1967) (if party found to have entered into stipulation "improvidently" because without counsel at the time, the stipulation could be discharged as "not conducive to justice"); *Children's Hosp. Medical Center* v. *Boston,* 354 Mass. 228, 233 (1968) (where the city had agreed that three of the indigent patient's hospital admissions were "necessarily incurred" and

the evidence established that two of the three admissions were "good medical practice" but not "necessarily incurred," the city was liable for the cost of only one); *Houghton* v. *Rizzo*, 361 Mass. 635, 637 n.1 (1972) (where counsel for the defendants made an admission during a pretrial conference which was dispositive of the case against them and which was inconsistent with the stipulation entered into by all the parties, the admission was discharged as it was "obviously not intended"); *Huard* v. *Forest St. Housing, Inc.*, 366 Mass. 203, 208-209 (1974) (where an action was tried on a stipulation of facts which omitted "seemingly significant information" known to the court because of earlier litigation, the stipulation was set aside and the matter remanded to the trial court).

Although we agree that pertinent portions of the stipulation are inconsistent with the board's findings made upon remand and after the stipulation, we conclude that any "inconsistency" does not warrant their discharge. The stipulation cannot on this record be viewed as improvident. It was entered into after two hearings before the board and with knowledge of the evidence there presented. As stated to the judge by counsel for the plaintiff, the stipulation was the product of careful negotiations between the parties, and the plaintiff refrained from calling witnesses in reliance upon the stipulation. Counsel for the board did not refute those statements to the judge, nor did she ask to be relieved of the stipulation. Indeed, by her argument that the evidence she wished to offer was neither precluded by nor in contradiction of the stipulation, she purported to abide by it.

Further, keeping in mind that the board's findings carry no evidentiary weight at the de novo hearing (see *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278, 282 n.7 [1986]; *Marr* v. *Back Bay Architectural Commn.*, 23 Mass. App. Ct. 679, 684 & n.6 [1987]), we cannot agree that it is conducive to justice to discharge the stipulation to the extent of any inconsistencies between the facts therein agreed upon and the findings of the board. Rather, we conclude that the judge was required to determine the validity of the board's decision upon the facts found by him on the stipulations and the evidence.

We look now to the findings made by the judge. Most of them are not in controversy, as they deal primarily with a description of the plaintiff's facilities and premises and the area in general. The crucial finding reads: "There is evidence to support the Board's conclusion (a) as to the outdoor play area, (b) as to the fire access off Adair Road, (c) as to water pressure, (d) as to the winter conditions possible on Perthshire Road, (e) as to the intense utilization of the plaintiff's campus, if not the chapel, and (f) as to parking." If the judge's finding is as to the sufficiency of the evidence before the board, it is irrelevant. We think, however, that the finding is as to the sufficiency of the evidence presented to him at the de novo hearing. That finding is clearly erroneous.

Two witnesses testified before the judge that the outdoor play area as it presently exists is too steep an area for play. While that might be their opinion and while that opinion could be found by some to be reasonable, the plaintiff presented unchallenged evidence that if the permit were allowed, the play area was to be levelled off and fenced in. As there was no evidence to show that the proposed play area was unsafe, we need not consider whether that factor is even a valid consideration under § 6-3 of the Boston Zoning Code. With regard to fire vehicle access, the evidence showed that fire trucks had two means of access to the proposed day care center: through the main entrance on Perthshire Street or up Adair Road. There was evidence, moreover, that Ellis was content with the plaintiff's proposed fire lane, which is to run from Adair Road along the full length of the proposed day care center. The only adverse evidence before the judge concerning fire safety was the testimony of one witness that a fire truck could not make a turnaround on Adair Road. As to water pressure, that same witness testified only that, under certain conditions, there "could" be a problem. Any "winter conditions possible on Perthshire Road" will be caused by climate and will not be the consequence of permitting a day care center. The reference to the "intense utilization of the plaintiff's campus" relates to the board's findings that traffic and parking problems will have an adverse impact on the neighborhood. Overlooking the fact

that the judge's agreement with the board's finding flies in the face of the evidence presented by the Boston traffic and parking department commissioner (see note 1, *supra*), we have concluded that the parties are bound by their stipulations. For the stipulation with respect to traffic and parking, see note 5, *supra*.

Although the board was "not compelled to grant a permit," *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969), it could not use its discretionary powers to deny an application for reasons which are unreasonable, whimsical, capricious, arbitrary, or based upon legally untenable grounds. See *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486-487 (1979), and cases therein cited. On the stipulations and evidence presented to the judge, we conclude that he was not justified in affirming the board's decision. Further, in view of the stipulations and evidence, we do not think that justice would be served by another remand to and a third decision from the board. Cf. *Newbury Junior College* v. *Brookline*, 19 Mass. App. Ct. 197, 208 (1985), and cases therein cited.

III. *Conclusion.*

It follows from all that we have said that the judgment is reversed. The matter is remanded to the Superior Court for entry of a new judgment annulling the decision of the board as in excess of its authority and directing the board to issue the conditional use permit within sixty days from the date of entry of the judgment.

*So ordered.*