MICHAEL COLANGELO & another,[1] trustees,[2] vs. BOARD OF
APPEALS OF LEXINGTON & another.[3]

Middlesex. October 4, 1989. - April 12, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Zoning*, Board of appeals: decision; Judicial review; Special permit, Validity of by-law or ordinance. *Practice, Civil*, Declaratory proceeding, Zoning appeal. *Jurisdiction*, Zoning, Declaratory relief.

A town's board of appeals acted arbitrarily and capriciously and exceeded its discretion in denying on the basis of adverse traffic impact a request for an exemption from lot size requirements in a commercial zone, where the applicants' lot met all the prerequisites for exemption under the zoning by-law, where the increase in traffic congestion would have been minimal, and where the board had approved other projects at about the same time which added significantly more traffic. [245-246] LIACOS, C.J., dissenting, with whom NOLAN, J., joined.

Plaintiffs seeking a declaration under G. L. c. 231A that a certain municipality's special permit requirements were invalid did not present an actual controversy, and thus were without standing to maintain their claim, in circumstances where they had withdrawn their application for a special permit before the municipal board of appeals took any action on it. [247-248]

CIVIL ACTION commenced in the Superior Court Department on November 25, 1985.

The case was heard by *William Highgas, Jr.*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Victor Bass* for Board of Appeals of Lexington & another.

---

[1] Steven Colangelo.

[2] Of Maguire Road Realty Trust.

[3] The town of Lexington.

*Brenda J. Fingold (Richard J. Innis* with her) for the plaintiffs.

LYNCH, J. The plaintiffs, Michael Colangelo and Steven Colangelo, trustees of Maguire Road Realty Trust, own two adjacent parcels of land in Lexington. The resulting lot does not meet the minimum area lot requirement of the town's zoning by-law for commercial development. The plaintiffs applied for a variance or, in the alternative, for an exemption, under § 7.4.4 of the by-law, from the minimum area requirement. They also applied for a special permit to build a 24,000 square foot office building, which was required even if they received a variance or exemption.

The board of appeals of Lexington (board) held a hearing on the plaintiffs' applications for both a variance and for an exemption from the three-acre minimum lot size requirement on October 24, 1985. On that date, the board specifically denied the plaintiffs both the variance and the exemption.

The board did not hear the plaintiffs' petition for a special permit with site plan review, which was withdrawn due to the denial of the variance by the board.

The board's decision of October 24, 1985, denying the plaintiffs a variance or exemption was based primarily on a determination regarding the traffic impact of the 24,000 square foot office building proposed by the plaintiffs in their special permit application.

A stipulated order of remand to the board was drawn by counsel for the parties and allowed by a Superior Court judge. The order of remand specifically provided that the board would consider the granting of a variance under G. L. c. 40A, § 10 (1988 ed.), or an exemption under § 7.4.4 of the zoning by-law, "without considering the specific use" of the property.

After rehearing, the board again denied the application. Another Superior Court judge then annulled the decision of the board. The judge granted the plaintiffs a variance and a § 7.4.4 exemption, invalidated the by-law's three-acre minimum area lot requirement as applied to the plaintiffs' land, and nullified the special permit requirement in the town's by-

law. The defendants appealed, and we transferred the case to this court on our own motion. We now affirm that the plaintiffs are entitled to a § 7.4.4 exemption, but vacate so much of the judgment as declared invalid the special permit provisions of the by-law.

We summarize the factual findings made by the judge at the conclusion of the Superior Court hearing after remand. The plaintiffs own a lot situated in the manufacturing and research park district (CM district) of Lexington. The lot is located at the intersection of Hartwell Avenue and Maguire Road and is bounded by two streets and by State-owned railroad tracks. The lot consists of two abutting parcels that were created in 1959, when the Commonwealth took land by eminent domain for the construction of two public ways. The total area of the lot is 2.24 acres. The minimum area requirement for the CM district is three acres.

Since the 1950's, development in the CM district has expanded. Numerous manufacturing and industrial plants have been built on Hartwell Avenue. The board has approved the development of numerous commercial complexes, including a bank, office buildings, and a restaurant. Some of these developments are situated on lots smaller than that of the plaintiffs.

As part of the applications, the plaintiffs presented a traffic impact study which concluded that the plaintiffs' proposed office building on the site would not adversely affect the present traffic-carrying capacity of the streets. A traffic engineer also concluded that, while there had been a traffic problem in the area for years, the proposed project would add only 296 vehicles to the 18,000 to 22,000 vehicles which use Hartwell Avenue daily. The traffic engineer stated that traffic did not correlate with lot size but with the number of persons who would use the building.

The board, nevertheless, denied the plaintiffs' applications for a variance or § 7.4.4 exemption on the basis of its determination that the proposed office building would have an adverse traffic impact on the adjoining roads. The plaintiffs

thereafter withdrew their petition for a special permit with site plan review.

The special permit provisions of the by-law conditioned all commercial use of land in the CM district on the discretionary grant of a special permit by the board. At the conclusion of the hearing, the plaintiffs filed a motion to amend their complaint to conform to the evidence presented and sought a declaration that the special permit provisions were invalid. The judge allowed the motion.

On November 17, 1987, the judge ruled that the plaintiffs were entitled to both a variance and a § 7.4.4 exemption. In addition, the judge declared invalid the three-acre minimum area requirement as it applied to the plaintiffs' lot, on the ground that the requirement lacked a rational legislative purpose. The judge also found the requirement of special permits for all commercial developments in the CM district to be in violation of the rule of *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101 (1984). The judge then remanded the matter to the board for the parties to reach an agreement on a reasonable use to be made for the lot.

In 1988, while the defendants' appeal was pending, the special permit provisions of the by-law were amended. The amended by-law provisions expanded the uses to which conforming lots may be put as of right without a special permit. Under the current by-law, a developer may build an office building with up to 10,000 square feet of office space without a special permit.

1. *The § 7.4.4 exemption.*[4] The board based its refusal to grant the plaintiffs' request for an exemption under § 7.4.4

---

[4]Section 7.4.4 (1985) provided: "In CM districts in particular instances the Board of Appeals may permit a principal building to be erected on a lot having less area or frontage, or both, than the minimum requirements specified in Table 2, if at the time of the adoption of said minimum requirements such lot was lawfully laid out and recorded by plan or deed and did not adjoin other land of the same owner available for use in connection with such lot, provided that the Board determines that such permission can be granted without substantial derogation from the intent and purpose of this By-law. A lot resulting from a taking by eminent domain after the adoption of said minimum requirements shall be deemed for the

on the severe traffic problems that existed in the vicinity of the plaintiffs' lot. In so doing the board rendered its decision unreasonable, whimsical, capricious, and arbitrary. *Humble Oil & Ref. Co.* v. *Board of Appeals of Amherst,* 360 Mass. 604, 605 (1971). Within one year of the board's 1985 decision, it approved in the same area projects that added 1,571 vehicle trips daily to the very same streets that the plaintiffs' proposed project would use. Several months after denying the plaintiffs' request that would have added 296 vehicle trips, the board approved the Katahdin Woods project that added 844 vehicle trips to those streets. This project was only one-quarter to one-half mile away from the locus. In addition, the judge found on the basis of expert testimony, not seriously challenged, that traffic impact is not related to lot size. The plaintiffs' lot met all of the § 7.4.4 prerequisites for an exemption from lot size. It is, of course, true that the board nevertheless had discretion to deny the plaintiffs' request. But to base its exercise of discretion on an imperceptible increase in traffic congestion which had existed for years, while approving, immediately before and after denying the plaintiffs' request, projects which added significantly more traffic is inexplicable and, therefore, an abuse of discretion. For this reason, we affirm that portion of the judgment granting the plaintiffs a § 7.4.4 exemption.

We therefore do not reach the question whether the plaintiffs are entitled to a variance or whether the judge erred in invalidating the three-acre minimum area requirement as it applied to the plaintiffs' lot.

We do not reach the variance issue because it was stipulated in the order of remand that the plaintiffs were seeking a variance *or* an exemption under § 7.4.4. With regard to the three-acre requirement, the judge declared it invalid on the ground that it lacked a rational legislative purpose. He ruled

purposes of this paragraph to have been lawfully laid out and recorded by plan or deed at the time of such adoption, if the larger lot of which it was a part before such taking was so laid out and recorded. In granting such permission, the Board may permit front, side, or rear yards of less than the minimum yard requirements specified in Table 2."

that this requirement was constitutionally defective only when applied to the plaintiffs' lot. The judge specifically stated that the by-law was invalid only in this instance, and not "invalid as a whole." Since we conclude that the plaintiffs are entitled to a § 7.4.4 exemption from the three-acre requirement, we need not address the constitutionality of the requirement if it were applied to the plaintiffs.

2. *The special permit requirement.* General Laws c. 40A, § 17 (1988 ed.), provides, with respect to appeals from special permit denials, that "[a]ny person aggrieved by a decision of the board of appeals . . . or any municipal officer or board may appeal to the superior court department in which the land concerned is situated . . . ." Given the plaintiffs' affirmative withdrawal of their special permit application, and the parties' stipulation before the Superior Court judge that no action was taken on the application, it is clear that, under G. L. c. 40A, § 17, the plaintiffs were not persons aggrieved by a decision of the board under the special permit provisions of the by-law.

The plaintiffs do not disagree but argue that, even though their special permit application was not formally denied, their amended complaint sets forth an "actual controversy," as is required for standing to seek a declaratory judgment. See G. L. c. 231A, § 1 (1988 ed.).

Where there has been a formal board decision, a special permit applicant cannot avoid the requirements of G. L. c. 40A merely by framing his challenge as a request for a declaratory judgment. See *Iodice* v. *Newton*, 397 Mass. 329, 333 (1986) ("The present action is no less an appeal under c. 40A, § 17, because it takes the form of a G. L. c. 231A, declaratory judgment action"). The circumstances of this case present no occasion to vary this rule.

Here the plaintiffs affirmatively withdrew their special permit application before any action was taken on it by the board. The "actual controversy" requirement of c. 231A has therefore not been met. It is insufficient for the purposes of establishing an actual controversy for a plaintiff simply to

find a defendant who disagrees on a point of law. *Bonan v. Boston*, 398 Mass. 315, 320 (1986).[5]

The judgment granting the plaintiffs a § 7.4.4 exemption is affirmed. That portion of the judgment declaring invalid the special permit provisions of the by-law is vacated, and a new judgment shall be entered dismissing that count in the plaintiffs' complaint challenging the special permit provisions.

*So ordered.*

LIACOS, C.J. (dissenting, with whom Nolan, J., joins). The court today, by concluding that the board acted arbitrarily, improperly substitutes its evaluation of the facts for that of the board. Because the board, in my judgment, acted within the bounds of its discretion, I dissent.

The board, in denying the permit, cited the severe traffic problems which existed in the vicinity of the plaintiffs' lot. Allowing the plaintiffs to build on the lot, according to the board, "would lead to further exacerbation of the current traffic problem . . . [and] would be contrary to the town's efforts to improve traffic conditions in the Hartwell Avenue - Bedford Street area . . . ." The board referred to the plaintiffs' "Traffic Impact Assessment," which stated that the intersections near the plaintiffs' lot are "generally congested . . . and characterized by very long delays during commuter periods of the day."

The board has power to deny a permit so long as it has not "based its decision on a 'legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " *Humble Oil & Ref. Co. v. Board of Appeals of Amherst*, 360 Mass. 604, 605 (1971), quoting *MacGibbon v. Board of Appeals of Duxbury*, 356 Mass. 635, 638 (1970).

---

[5]We note that, even if an actual controversy had been present, the effect of the 1988 amendments to the by-laws would have been to permit the construction of a 10,000 square foot building. See *American Dog Owners Ass'n v. Lynn*, 404 Mass. 73, 78 (1989) (amendment of ordinance after trial rendered matter moot).

In my view, the board acted within its discretion in refusing to grant the plaintiffs a permit. The judge's finding that additional traffic from the plaintiffs' proposed project would be minimal does not negate the fact that the board could find that the plaintiffs' building would exacerbate the traffic problem. "To hold that a decision . . . denying a permit is arbitrary . . . whenever the board, on the facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion." *Subaru of New England, Inc.* v. *Board of Appeals of Canton,* 8 Mass. App. Ct. 483, 486 (1979), quoting *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277-278 (1969). "[I]t is 'the board's evaluation of the seriousness of the problem, not the judge's, which is controlling.' " *Subaru of New England, Inc., supra* at 488, quoting *Copley* v. *Board of Appeals of Canton,* 1 Mass. App. Ct. 821, 821 (1973).

The fact that the board reached a different conclusion with respect to previous projects does not necessarily control a determination whether it acted arbitrarily in this particular case.[1] The board noted the traffic impact assessment's observation that the "general congest[ion]" and "very long delays" is "*particularly true* for vehicles attempting left turns from the minor streets into Hartwell Avenue" (emphasis added). The plaintiffs' lot lies virtually on top of the intersection at issue in this case. The board properly could consider the particular hazards associated with the location of the lot in reaching its decision. In essence, the board concluded that this particular lot was different, not only due to traffic impact, but also due to the location of the lot.

I fear that the court's opinion will deter cities and towns from denying permits when it is clearly within their discre-

---

[1]The board may reasonably conclude, after approving a number of projects, that the balance has tipped so that any further increase in traffic will result in such congestion that the purpose of the zoning by-law will be frustrated. Any action taken by the board after the denial of the plaintiffs' applications should not be considered in a determination whether the board acted within its discretion at the time it reviewed the plaintiffs' applications.

tion to do so. I hope that the cities and towns will understand this case to be an aberration, and that they will remain assured that they retain the broad discretion vested in them by statutory authority and reaffirmed by sound precedent. Municipalities are in the best position to know whether the development of a particular lot will have an adverse impact on the quality of life of their citizens. Only in exceptional cases should a court interfere with the discretion of the board to make determinations of this type. This is not such a case.

I dissent.