## Lakeside Builders, Inc., & another[1] *vs.* Planning Board of Franklin & others.[2]

No. 00-P-1700.

Suffolk. September 5, 2002. - December 27, 2002.

Present: Cypher, McHugh, & Kafker, JJ.

*Subdivision Control,* Planning board, Approval of plan, Streets. *Planning Board. Municipal Corporations,* Planning board. *Constitutional Law,* Equal protection of laws, Regulation. *Practice, Civil,* Subdivision control appeal, Trial de novo. *Due Process of Law,* Vagueness of regulation.

A Land Court judge did not err in upholding a town planning board's denial of a waiver of its regulation regarding the length of dead-end streets in subdivisions and its disapproval of the plaintiff's subdivision plan, where the board had not established a history or practice of granting waivers for subdivision plans that were substantially similar to the plaintiff's plan, and where, therefore, the plaintiff had not sustained its burden of proving that the board had acted arbitrarily in denying the waiver and in disapproving the plaintiff's plan. [846-848]

This court declined to consider a challenge to a town planning board's denial of a waiver of its regulation regarding the length of dead-end streets in subdivisions as violative of the plaintiff's equal protection rights, where the claim had not been raised in the Land Court [848]; further, this court determined that a constitutional challenge to the dead-end street regulation as applied to the plaintiff's subdivision plan was not ripe, in that the board had not made a final, authoritative determination regarding the maximum allowable use of the plaintiff's locus [848-849].

In a civil action challenging a town planning board's denial of a waiver of its regulation regarding the length of dead-end streets in subdivisions, the Land Court judge did not err in considering the aggregate length of two dead-end streets from the nearest through street, rather than the one street included in the plaintiff's subdivision plan, where the planning board had considered the aggregate length of the two streets in denying the waiver [849-850]; nor did the Land Court judge err in considering the town's master plan, which did not become effective until after the plaintiff had filed its preliminary plan, where consideration of the master plan helped to

---

[1] Mastro Co., Inc.

[2] Scott J. Nathan, Douglas M. Morin, Mark Blazejewski, James C. Chilson, and Edward Yadisernia, as they are members of the planning board of the town of Franklin.

make clear what standards within the board's subdivision rules would apply to the plaintiff [850-851]; further, the Land Court judge did not err in declining to decide other issues that were outstanding, where affirmance of the board's denial of the dead-end street length waiver was sufficient to deem the plan disapproved [851].

This court declined to consider a challenge to a town planning board's regulation on the ground that it was not sufficiently specific, where the claim had not been raised in the Land Court. [851-852]


CIVIL ACTION commenced in the Land Court Department on November 19, 1997.

The case was heard by *Mark V. Green*, J.

*Mark C. O'Connor* for the plaintiffs.

*Mark J. Lanza*, Town Attorney, for the defendants.

CYPHER, J. Lakeside Builders, Inc. and Mastro Co., Inc. (collectively Lakeside) appeal from a Land Court judgment upholding the decision of the Franklin Planning Board (the board) to disapprove Lakeside's definitive subdivision plan. In September, 1997, Lakeside filed an application for approval of a definitive subdivision plan. Lakeside proposed to subdivide a seventeen acre parcel of land (locus) into eight lots. Lakeside sought four waivers from the board's subdivision regulations regarding (1) the maximum length of dead-end streets; (2) the center-line grade of streets; (3) the number of sidewalks; and (4) the roadway cross-sections. The board disapproved Lakeside's definitive plan and denied three of the four waiver requests.[3] Lakeside appealed the board's decision to the Land Court pursuant to G. L. c. 41, § 81BB. The Land Court affirmed the board's decision.

Lakeside appeals from the Land Court's decision, arguing that both the board and the Land Court erred on several grounds and that the plan, therefore, should be approved. We conclude that the Land Court's decision was supported by the evidence and that the court did not err in its findings and conclusions.

1. *The undisputed facts.* On September 22, 1997, the board

_____

[3]Specifically, the board rejected the dead-end street length waiver, the center-line grade waiver, and the sidewalk waiver. The board also disapproved the plan because the intersection of the proposed subdivision road with the existing subdivision road will not provide for safe vehicular and pedestrian travel.

disapproved Lakeside's preliminary plan, as well as a revised preliminary plan submitted at the hearing that date, because the plans did not comply with the dead-end street length regulation. On September 30, 1997, Lakeside applied for approval of the definitive plan entitled "Shepard's Brook Estates II" (the plan). The board held a public hearing on October 20, 1997.

The plan shows a subdivision road labeled "Road A," approximately 1,200 feet in length. Road A intersects at a right angle with Mastro Drive, a previously approved subdivision road, which itself terminates in a cul-de-sac just beyond this intersection. The nearest through street to Road A and Mastro Drive is Partridge Street, which is connected to Mastro Drive by Ginny Lane. Partridge Street is approximately 3,100 feet from the further end of proposed Road A.

The plan proposed eight single-family house lots on seventeen acres of land. The locus is bordered on its north, east, and west by residential neighborhoods, and on the east and south by wetlands.

Lakeside requested waivers from four of the board's regulations: (1) section 300-10(D)(5), which provides that street center-line grades may not deviate more than seven feet from existing grade conditions; (2) section 300-10(E)(4), which imposes a maximum length of 600 feet for dead-end streets; (3) sections 300-9(B)(1) and 300-10(B)(5) and Appendix 1, which regulate roadway cross-sections; and (4) section 300-13(A), which generally requires sidewalks on both sides of a subdivision road. As did the Land Court judge, we concern ourselves chiefly with the issue of the length of dead-end streets — Road A here.

The board voted to deny the plan and filed its certificate of disapproval with the town clerk. In previous years, the board had granted approximately twenty waivers from section 300-10(E)(4), the dead-end street length regulation.

Lakeside appealed the board's decision to the Land Court, complaining that the board was arbitrary, capricious and unreasonable when it denied the dead-end street length, center-line grade, and sidewalk waivers. The board also denied the plan on the basis of noncompliance with section 300-10(B)(1) of the board's regulations, which concerned the safety of

pedestrian and vehicular traffic. After a trial de novo, the Land Court issued its decision affirming the board's denial of the plan.

2. *Discussion.* The judge's findings will not be disturbed unless they are clearly erroneous. *Hamilton* v. *Planning Bd. of Lexington*, 4 Mass. App. Ct. 802, 803 (1976). We review the board's underlying decision to deny a waiver and determine whether that decision is premised upon "a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355 (2001), quoting from *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999). The burden of proof is on the party challenging a planning board's action. *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. 545, 548 (1975). "When reviewing a planning board's disapproval of a definitive subdivision plan, both the Land Court and the appellate courts are 'confined to the reasons for disapproval of the subdivision plan stated by the planning board.' " *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston*, 45 Mass. App. Ct. 738, 741-742 (1998), quoting from *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 307 (1976).

The judge reasoned as follows. Only once, eight years earlier, had the board previously granted a dead-end street length waiver for a plan that was substantially similar to Lakeside's plan. Otherwise, prior grants of dead-end street length waivers were for plans in which the dead-end street did not extend as far from the nearest through street as Road A extended from its connection to Partridge Street.[4]

The judge noted that, in the past, the board appeared to have encouraged dead-end streets rather than through streets. In certain instances, the board had requested developers not to construct a portion of a road layout in order to prevent any through connection to the abutting parcel, neighboring subdivision, or nearest through street. The judge found, however, that

---

[4] In 1990, the board approved a subdivision plan with a dead-end street 3,200 feet long, and, in 1989, it approved another subdivision plan with a dead-end street 2,600 feet long. The judge focused upon the 3,200 foot street, approved in 1990, as the single instance of a waiver that was comparable to Lakeside's request for a waiver on Road A.

the board's perspective concerning dead-end streets had recently changed, as reflected in goal 2 of the Franklin master plan and its subsidiary objectives, which generally favor through streets over dead-end streets so as to improve overall traffic flow.[5] The board's new emphasis is borne out by the fact that it denied three other plans for the same reason (dead-end streets that exceeded the 600 foot limit) shortly before and after the denial of Lakeside's plan. The board has, of course, the right to change its planning objectives.

The judge also found that the board's concern regarding such a long dead-end street was buttressed by the fact that, in its earlier consideration of Lakeside's Shepards Brook Estates I plan, the board had expressed its desire for a road connection between the locus and the property situated to the north of the locus. The judge found that the board had been consistent in its request for a through connection of the proposed roads over the course of its review of the development.

*a. Dead-end street length waiver.* Lakeside contends that denial of the street length waiver was arbitrary. "A planning board . . : enjoys broad discretion under G. L. c. 41, § 81R, to waive strict compliance with the requirements of its subdivision rules and regulations when such waiver is in the public interest and not inconsistent with the intent and purpose of the subdivision control law; it is not, however, required to grant a waiver." *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. 831, 837 (2002), citing *Miles* v. *Planning Bd. of Millbury*, 404 Mass. 489, 490 n.4 (1989). Refusal to grant a waiver, in certain instances, can constitute an abuse of discretion. See *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 85-86 (1976).

Lakeside argues that the board had an established history and practice of granting dead-end street length waivers and, therefore, the board acted arbitrarily and capriciously or

[5]The master plan was approved on July 21, 1997, after Lakeside had submitted its preliminary plan to the board but before Lakeside had submitted its revised preliminary plan. Goal 2 of the master plan states, in relevant part, "*Circulation & Connectivity*: Plan future road & sidewalk locations, improvements, and traffic patterns in order to provide more efficient circulation patterns, greater connectivity between subdivisions, improvements to conditions presenting safety hazards, and reduced emergency response times."

otherwise abused its discretion in refusing to grant the waiver for Road A.[6] Lakeside points to the fact that the board granted twenty-one waivers for subdivisions with dead-end streets longer than 600 feet in the fourteen-year period preceding the subject denial. Lakeside further notes that these waivers were all allowed despite the fact that the dead-end street regulation does not expressly provide the board with discretion to grant waivers. Lakeside relies on *Musto, supra,* and *Colangelo* v. *Board of Appeals of Lexington,* 407 Mass. 242 (1990), in support of its argument that, based on its past practice of granting waivers, the board was arbitrary in denying the waiver.

In *Musto, supra* at 832-835, the planning board approved a preliminary plan with certain conditions (including that the proposed subdivision road not connect with an abutting subdivision but, rather, end in a cul-de-sac) but then denied the definitive plan even though it incorporated the board's request for a dead-end road. We agreed with the trial judge that the planning board in *Musto* acted arbitrarily because, among other reasons, the planning board had just approved a substantially similar waiver of the dead-end street length regulation.[7] *Id.* at 835.

In *Colangelo, supra* at 244, the other case relied upon, the zoning board denied the plaintiff's variance request for an exemption from a three-acre minimum lot size requirement because of the supposed effect the undersized lot would have on traffic. Again, the court agreed with the trial judge's finding that the zoning board had abused its discretion because, around the same time it had denied the plaintiff's variance request, it had approved similar variances for other nearby sites, within only one-half mile or less of the plaintiff's site, that had greater impacts on traffic than the plaintiff's site would have had. *Id.* at 246.

---

[6]Lakeside argues that because of the board's history and practice, it had, in effect, amended its regulations. The cases cited by Lakeside do not support this proposition. The history and practice of a planning board, however, are factors that may be considered when deciding whether a planning board has acted arbitrarily or capriciously.

[7]The waiver was for the abutting subdivision and was granted in exchange for that subdivision developer's agreement not to project the proposed road into the Musto subdivision. These facts prompted the trial judge in *Musto* to conclude that the board acted in bad faith. *Id.* at 835-836.

Thus, *Musto* and *Colangelo* are distinguishable. Here, Road A was to connect to Mastro Drive, which itself functioned as a dead-end street. The length of Mastro Drive, via Ginny Lane, to the nearest through street is 1,900 feet, leaving a total length of 3,100 feet from the further end of proposed Road A to Partridge Street, the nearest through street. Previously, the board had granted only one request for a waiver from the dead-end street length requirement that was substantially similar to Lakeside's request — that of Franklin Woods for a dead-end street ending 3,200 feet from the nearest connector street. That grant occurred in 1990, eight years before Lakeside's plan. More recently, the board had denied a dead-end street length waiver request (only nine months prior to submission of the subject plan) and had denied two other waivers shortly after. Therefore, unlike in *Musto* and *Colangelo*, the board had not established a history or practice of granting waivers for plans that were substantially similar to the subject plan. Accordingly, the trial judge could find that Lakeside had not sustained its burden of proving that the board acted arbitrarily in denying the waiver from the dead-end street length requirement and then in disapproving Lakeside's plan. We conclude that the trial judge did not err in affirming the board's disapproval of the plan, despite the previous waivers from the street length requirement that had been granted.

b. *Equal protection claim.* Lakeside argues that the board's refusal to grant it a dead-end street length waiver also violated its constitutional right to equal protection, supposedly because similarly situated persons received disparate treatment by the board when they, unlike Lakeside, were granted waivers. This claim was not raised below; therefore, we do not address it. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 674 (2000).

c. *Constitutionality of dead-end street regulation.* Next, Lakeside challenges the constitutionality of the dead-end street length regulation as applied to its plan. Lakeside has not articulated on what specific ground, separate from equal protection, it claims the dead-end street length regulation is unconstitutional; it

merely points to *Francesconi* v. *Planning Bd. of Wakefield,* 345 Mass. 390 (1963), to demonstrate that the board's actions might be unconstitutional because the refusal to grant a waiver on Road A results in a restriction on the number of homes that it can construct on the locus.[8]

Even were we to assume that the defendant's argument rises to the level of proper appellate argument (see Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]), there is no error. We are not persuaded that the dead-end street length regulation leaves Lakeside with no other choice than to develop only three lots on the locus. The Land Court held that Lakeside failed to establish that the board's denial of its definitive plan was a regulatory taking. Specifically, the court found that the board's decision does not preclude use of the locus in a manner allowed as of right under the board's subdivision rules or in a manner permitted under the applicable zoning regulations without need for a subdivision. Put another way, Lakeside's claim is not ripe because there has not been a final authoritative determination regarding the maximum allowable use of the locus. "The denial of a particular plan cannot be equated with a refusal to permit any development." *Daddario* v. *Cape Cod Commn.,* 425 Mass. 411, 417 (1997), citing *MacDonald, Sommer & Frates* v. *County of Yolo,* 477 U.S. 340, 347 (1986).

d. *Consideration of length of Mastro Drive.* Lakeside contends that the Land Court judge impermissibly considered the aggregate length of the dead-end roads, Road A and Mastro Drive, from Partridge Street, the nearest through street. The judge determined the combined length to be approximately 3,100 feet (1,200 feet for Road A, 1,200 feet for Mastro Drive, and 700 feet for Ginny Lane, which connects Partridge Street to Mastro Drive). Lakeside contends that the board relied exclusively upon the 1,200 foot length of Road A as reason to deny the road length waiver and, therefore, the judge was bound to do the same.

De novo review of the board's decision was to be confined to the reasons stated by the board for denying Lakeside's plan.

---

[8]Lakeside admits in its brief that the *Francesconi* court did not conclude that the board's denial of a preliminary plan (because a proposed dead-end road exceeded the board's maximum length requirement) was unconstitutional.

*Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. at 307. The evidence, however, was not confined to what the board may have considered; the judge was to make his own findings, independent of any findings by the board, and then apply those to the reasons stated by the board for denying the road length waiver and ultimately the plan. See *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953); *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 478-479 (1955).

The board did, in fact, consider the length of Mastro Drive which, like Road A, is designed as a dead-end street. The board cited as its main reason or concern in denying the road length waiver the proposed length of Road A; but the board was also concerned that Road A would connect with Mastro Drive, another dead-end road of substantial length. In making his own independent findings, the judge appropriately weighed these same concerns by considering, as the board had, the overall distance between the terminus of Road A and the nearest through street.

Lakeside contends that the judge should have focused upon the board's prior waivers from the street length regulation and not upon the aggregate length of Road A and Mastro Drive. But in evaluating the board's history or practice of granting such waivers, the judge was required to compare situations that are substantially similar. Thus, it was necessary to consider the combined length of the two dead-end roads in order to make meaningful comparison to other cases.

e. *Consideration of master plan.* Lakeside argues that G. L. c. 41, § 81Q, prohibits the board from applying new subdivision rules and regulations to a subdivision plan once a preliminary plan is filed. Thus, in Lakeside's view, the Land Court should not have considered the 1997 master plan, which did not become effective until after Lakeside had filed its preliminary plan. The board did not err in considering the master plan.

General Laws c. 41, § 81Q, provides that a "preliminary plan and the definitive plan evolved therefrom shall be governed by the rules and regulations relative to subdivision control in effect at the time of the submission of the preliminary plan . . . ." The Subdivision Control Law, G. L. c. 41, §§ 81K-81GG

inclusive, however, does not govern master plans, which appear as separate section 81D.[9] Moreover, a duly approved master plan may help to make clear what standards within a board's subdivision rules will apply to an applicant. See *Canter* v. *Planning Bd. of Westborough*, 7 Mass. App. Ct. 805, 812 (1979). The master plan's provisions in favor of through streets accomplished that purpose here.

f. *Sidewalk and center-line grade waivers.* Lakeside contends that the Land Court erred by not deciding the remaining issues, including the requests for sidewalk and center-line grade waivers; compliance with section 300-10(B)(1) of the board's regulations, respecting the design of subdivision streets so as to provide for safe pedestrian and vehicle travel; and an alleged inconsistency between the board's vote and its decision. Lakeside argues that the board's denial of the sidewalk and center-line grade waivers was arbitrary and unreasonable and that the board's denial of the plan based on section 300-10(B)(1) was improper because the board did not vote to disapprove the plan on that basis and because the board failed to satisfy its burden of proving that the plan did not comply with section 300-10(B)(1).

"If the record discloses that any substantial reason given by the board for disapproval of the plan was proper, the court's decree will be affirmed." *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. at 80-81. Affirmance of the board's denial of the dead-end street length waiver is sufficient to deem the plan disapproved. We need not discuss the remaining waivers because there is no requirement that all issues before a court must be decided when one issue is dispositive of the entire case.

g. *Section 300-10(B)(1) — the question of vagueness.* Finally, Lakeside argues that section 300-10(B)(1) of the board's regulations is unenforceable because it does not meet the specificity standard set forth in *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). This claim was not

---

[9]Section 81D indicates that the master plan is a statement designed to provide a basis for decision making regarding the long-term physical development of the municipality, which includes, among other things, goals and policies of the planning board. G. L. c. 41, § 81D.

raised below. Accordingly, we do not address it here. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. at 674.

The judgment of the Land Court is affirmed.

*So ordered.*