EDWARD MUSTO & another[1] vs. PLANNING BOARD OF MEDFIELD.

No. 00-P-67.

Suffolk. January 11, 2002. - May 24, 2002.

Present: LENK, MASON, & GRASSO, JJ.

*Subdivision Control,* Planning board, Decision of planning board. *Municipal Corporations,* Planning board. *Planning Board.*

The defendant town planning board acted unreasonably in refusing the plaintiff developer's request for an extension of time in order to obtain formal approval from the board of health for a subdivision plan, and therefore, a Land Court judge properly overturned the planning board's denial of the developer's subdivision plan. [836-837]

A Land Court judge properly found that the defendant town planning board abused its discretion in denying to the plaintiff developer waivers of the town's rules regarding dead-end road length and road width, where the public safety purposes for which the dead-end limit was adopted did not necessitate the denial of the waiver, where the cul-de-sac created in the plaintiff's subdivision plan served the public interest, where the planning board had previously approved similar requests, and where the planning board's wish to limit the number of buildable lots on the plaintiff's subdivision was not a proper criterion for denial. [837-839]

CIVIL ACTION commenced in the Land Court Department on June 10, 1996.

The case was heard by *Mark V. Green, J.*

*Mark G. Cerel* for the defendant.

*David Hern, Jr.,* for the plaintiffs.

LENK, J. The Medfield planning board appeals from a decision of the Land Court, which overturned the planning board's denial of the Mustos' definitive subdivision plan.[2] The judge found that the planning board's decision was not legitimately

---

[1]Bonnie Musto.

[2]In a consolidated case, the judge upheld the board's refusal to endorse, as "approval not required" pursuant to G. L. c. 41, § 81P, a plan proposing to

based on any of the three stated reasons for the denial but was instead principally motivated by a desire to limit the number of lots developed on the locus to fewer than would be permissible under the subdivision control law and the town's rules and regulations. On appeal, the planning board contends that the judge misapplied pertinent law; it does not contend that the judge's findings of fact are clearly erroneous. We affirm.

*Background.* We first recite the judge's findings of fact and rulings of law in some detail. The Mustos own an 8.3 acre parcel of land in Medfield (the Musto parcel). This land, plus an additional abutting 1.3 acres then owned by the trustees of the Hoover Realty Trust (Trust), is the subject of the subdivision plan at issue here (the locus). Since 1993, the Mustos have presented to the planning board various plans related to their parcel and the locus. .

During review of the various plans, planning board members consistently expressed the view that the plans proposed too many lots for the site (nine was the highest number proposed) and that there should be no through connection between the locus and adjacent property owned by the Trust, part of which later formed the Woodcliff Hills subdivision. These views arose, respectively, from concern for the presence of wetlands on the locus and concern that a through connection of the locus and the Woodcliff Hills subdivision would generate an undesirable increase in traffic through surrounding residential areas.

In July, 1995, the Mustos and the Trust submitted for approval a preliminary subdivision plan for the locus which contained nine lots. The frontage was on a road, shown as Erik Road Extension, which extended from the end of the then-constructed dead end of Erik Road at the western boundary of the locus and continued to the eastern boundary of the Musto parcel, where the road connected to a proposed roadway in the adjacent Woodcliff Hills subdivision. Prior to this filing, the Trust had obtained approval of a preliminary plan for the Woodcliff Hills subdivision.

The planning board held a hearing on the preliminary plan for the locus on August 21 and September 25, 1995, at which

divide a portion of the Musto parcel into multiple lots. The Mustos do not challenge that decision on appeal.

the Mustos presented a conceptual plan that extended past the Musto parcel's eastern boundary into the Trust's adjacent property in the locus and ended in a cul-de-sac. The planning board affirmed its desire that no through connection exist between Woodcliff Hills and the Musto parcel.

At the September 25 meeting, the board approved the preliminary plan, subject to the following conditions:

> "1. That there be no further connection to any other subdivision.
>
> "2. That the [cul-de-sac] be brought back into the subdivision sufficiently that there be at least portions of buildable lots between the [cul-de-sac] and the property line.
>
> "3. That no additional roads be built within the subdivision.
>
> "4. That the applicant discuss with the trails committee the possibility for any trails through the development.
>
> "5. That the utility easement also be encumbered as a trail easement.
>
> "6. That there be no more than [nine] buildable lots in the subdivision.
>
> "7. That the conditions of all other town boards be met."

The board also indicated it "would consider" waivers from the town's rules and regulations with regard to the maximum length and width of the road ending in the cul-de-sac.[3] Less than two weeks later, the board approved the definitive plan for the Woodcliff Hills subdivision. In so doing, it waived the dead-end street length requirement in exchange for an agreement by the Trust not to permit a through street connection to the Mustos' proposed subdivision.

On December 27, 1995, the definitive plan for the locus was submitted. As with the preliminary plan, this version proposed nine lots, with frontage on Erik Road Extension extending from

---

[3]The board's land subdivision rules and regulations state that "[s]treet layouts shall not be less than fifty (50) feet in width" and "[t]he maximum length of a non-through street shall be 500 feet, including turnaround."

the end of the then-constructed dead-end of Erik Road at the western boundary. The layout width of the roadway was to be forty feet. Instead of connecting to the Woodcliff Hills subdivision, as in the preliminary plan, the road continued to its end in a cul-de-sac, whose bulb extended beyond the Musto parcel's eastern boundary. A twenty-foot wide strip of land was included within two of the lots and wrapped around the end of the cul-de-sac, separating it from the Trust's adjacent land. The subdivision roadway extended approximately 750 feet from the previously-constructed dead end of Erik Road; the total distance from the intersection of Erik Road and the nearest connecting street to the end of the proposed cul-de-sac was approximately 900 feet.

On February 1, 1996, the board of health recommended against approval of the definitive plan. On April 24, however, the board of health advised the Mustos that it would recommend approval if the definitive plan incorporated certain specified modifications to the proposed drainage system. After agreeing to make the suggested revisions, the Mustos requested that the board of health inform the planning board of its willingness to approve a plan in compliance with its suggestions. Though a copy of the minutes was forwarded to the planning board, the Mustos did not thereafter submit a revised plan to the board of health for formal action, and the board of health never formally modified its earlier recommendation against approval.

The planning board held hearings on February 5, March 4, and May 20, 1996. At the May 20 hearing, the planning board reviewed a copy of the board of health's April 24 meeting minutes. The planning board chair stated that the adverse February recommendation still reflected the board of health's formal position on the definitive plan. The Mustos explained that they intended to submit a revised plan to the board of health after reviewing the proposed modifications with the planning board. The planning board declined the Mustos' request to extend the public hearing so that they could submit a revised plan to the board of health. Instead, the planning board closed the hearing and denied approval of the definitive plan. In its May 21, 1996, certificate of denial, the planning board cited three reasons for its decision: (1) that the board of health had denied approval of

the plan; (2) that the proposed street layout did not satisfy the required fifty-foot layout; and (3) that the proposed street would exceed the 500-foot length limit for dead-end streets.

The judge also found that, between June, 1994 and October, 1995, the planning board had waived the maximum dead-end street-length requirement in order to approve six subdivisions, including Woodcliff Hills. Except for Woodcliff Hills, the judge found the record insufficient to permit a comparison of the characteristics of those subdivisions with those of the locus. As to Woodcliff Hills, however, he found that the street-length requirement had been waived in exchange for an agreement by the Trust not to permit a through-street connection to the locus.

In his rulings of law, the judge determined that the planning board's three stated reasons for denying subdivision plan approval were insufficient to the task and served instead as a guise to block the Mustos' valid maximization of the number of buildable lots.

The main reason stated for the denial cited by the planning board was the board of health's adverse recommendation. As to this, the judge stated:

> "[A]t the time of its disapproval the planning board was aware that the board of health had advised Mr. Musto that it would recommend approval of the definitive plan if the plan incorporated certain specified modifications to the proposed drainage system, and that Mr. Musto had agreed to make such changes. Prior to submitting a revised plan incorporating such modifications to the board of health for formal action, Mr. Musto sought to determine whether the planning board wished to suggest any other modifications. Under such circumstances, it was unreasonable for the planning board to refuse to grant Mr. Musto's request for a continuation of the hearing to allow time for the board of health to state formally its revised recommendation on the definitive plan. The board's reliance on the prior adverse recommendation by the board of health elevates form over substance, and cannot stand as a valid reason for denial of the definitive plan."

The judge also ruled that the planning board had abused its discretion in denying the Mustos' request for a waiver of the

500-foot limitation of dead-end roads and the fifty-foot road layout width requirement,[4] finding that the planning board, in denying the definitive plan, acted with the improper motive of limiting the number of lots in the subdivision to fewer than would otherwise be permissible. The judge specifically found that no safety issues were raised by the proposed waivers. The judge further found that the planning board took affirmative action to prohibit a through road to the abutting Woodcliff Hills subdivision, granted that subdivision a waiver of the dead-end road limitation, and then unreasonably refused the Mustos the same waivers after having required the cul-de-sac of them in the first instance. He deemed the refusal to grant the waivers to be in bad faith and an abuse of discretion, and hence ultra vires. Accordingly, the judge remanded the case to the planning board for action on the definitive plan consistent with his decision.

*Discussion.* The board does not suggest that the facts as found are clearly erroneous but instead claims that the judge misapplied the law. When reviewing a planning board's disapproval of a definitive subdivision plan, both the trial and the appellate courts are "confined to the reasons for disapproval of the subdivision plan stated by the planning board." *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston*, 45 Mass. App. Ct. 738, 742 (1998), quoting from *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 307 (1976).

*Board of health.* "A planning board has no discretion to disapprove a subdivision plan which has been approved by the board of health and is in conformance with the reasonable rules and regulations of the planning board." *MP Corp.* v. *Planning Bd. of Leominster*, 27 Mass. App. Ct. 812, 819-820 (1989), quoting from *Patelle* v. *Planning Bd. of Woburn*, 6 Mass. App. Ct. 951, 951 (1978).

The planning board argues that the board of health had denied approval of the definitive plan and it, therefore, lacked the discretion to approve the plan. See *Loring Hills Developers Trust* v. *Planning Bd. of Salem*, 374 Mass. 343, 348 (1978). The judge found that the planning board had before it minutes of a board of health meeting that showed that the board of health

---

[4] The judge found that the width waiver was inconsequential, and the town makes no argument pertaining to it on appeal.

had indicated that it would approve the definitive plan if the Mustos agreed to certain modifications, and that the Mustos had indeed agreed to those modifications. We agree with the judge that, in these circumstances, it was unreasonable for the board to "elevate form over substance" by refusing the Mustos' request for an extension of time in order to obtain formal approval from the board of health.

*Waiver.* The planning board also argues that, since the proposed dead-end road length did not conform to the town's rules and regulations, and the planning board was not obliged to waive strict compliance with this rule, it acted properly in disapproving the definitive subdivision plan. A planning board, of course, enjoys broad discretion under G. L. c. 41, § 81R, to waive strict compliance with the requirements of its subdivision rules and regulations when such waiver is in the public interest and not inconsistent with the intent and purpose of the subdivision control law; it is not, however, required to grant a waiver. *Miles* v. *Planning Bd. of Millbury*, 404 Mass. 489, 490 n.4 (1989). *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 85-86 (1976). A planning board's decision to grant or deny a waiver will be upheld unless premised upon "a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355 (2001), quoting from *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999) (analyzing discretionary authority to decide special permit applications). Accordingly, there may be circumstances where a planning board's decision to deny a waiver may constitute an abuse of discretion, just as there may be circumstances where granting a waiver may be an abuse of discretion. See *Mac-Rich, supra* at 86 (evidence did not demonstrate that planning board abused its discretion by refusing to waive compliance with regulations); *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 443-444 (1979), *S.C.*, 10 Mass. App. Ct. 884 (1980) (board's purported waiver of regulation in requiring plans to show municipal servicing "inconsistent with the intent and purpose of the subdivision control law" where letter accompanying certificate of approval failed explicitly to require installation of water pipes, fire

hydrants, telephone lines or ducts, fire alarm cables and boxes, and street lights); *Nahigian* v. *Lexington*, 32 Mass. App. Ct. 517, 523 (1992) (case remanded for judicial determination whether board abused its discretion in denying waiver). Cf. *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 518-520 (1976) (danger of flooding and erosion was not legally tenable ground for outright denial of permit); *Colangelo* v. *Board of Appeals of Lexington*, 407 Mass. 242, 245-246 (1990) (abuse of discretion to deny exemption on basis of traffic while inexplicably approving, immediately before and after denial, projects that added significantly more traffic); *V.S.H. Realty, Inc.* v. *Zoning Bd. of Appeals of Plymouth*, 30 Mass. App. Ct. 530, 534-535 (1991) (imposition of legally untenable conditions is sufficient to meet arbitrary and capricious standard).

Here, the judge found that the public safety purposes for which the dead-end limit was adopted did not necessitate denial of the waiver, and that the planning board's wish to limit the number of buildable lots was not a proper criterion for denial. The planning board now argues that the waiver was inconsistent with the intent and purpose of the subdivision control law, citing to evidence adduced at trial which it claims undergirds legitimate concern for drainage and flooding issues. In this regard, the planning board points to evidence of a stream and of wetlands on the Musto parcel and the wetlands' function in providing flood storage capacity and preventing downstream flooding, as well as the potential negative impact on this function by overdevelopment. The evidence of record, however, cannot bear the weight of this argument. The evidence that a stream and wetlands exist on the property and that more houses and roads generally create more drainage issues does not constitute evidence that the waiver permitting a 900-foot road rather than a 500-foot road would result in increased drainage and flooding in the Musto parcel or in downstream property, or that the drainage solutions presented to the planning board or the board of health were inadequate.

The planning board also suggests that in past instances where it granted waivers, wetlands were not involved. The record does not support this. Further, a planning board member admitted at trial that creating a cul-de-sac rather than a through road served

the public interest. Given the evidence that the waiver did not implicate the safety reasons for the dead-end limit, that creating a cul-de-sac rather than a through road served the public interest, that the board had previously approved similar requests, and that a desire to reduce the number of buildable lots motivated the board, we cannot say that the judge erred in finding that the planning board abused its discretion in denying the waiver.[5]

*Judgment affirmed.*

---

[5]The judge's finding that the board acted in bad faith, while perhaps not necessary to his finding that the board abused its discretion, is supported by the judge's subsidiary findings. *Quincy* v. *Planning Bd. of Tewksbury*, 39 Mass. App. Ct. 17, 23-24 (1995). We see nothing in *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, cert. denied, 516 U.S. 931 (1995), that requires a different result.