WALL STREET DEVELOPMENT CORPORATION *vs.* PLANNING
BOARD OF WESTWOOD & another[1]
(and two companion cases[2]).

No. 07-P-976.

Suffolk. April 17, 2008. - October 14, 2008.

Present: DUFFLY, ARMSTRONG, & BERRY, JJ.

*Subdivision Control,* Decision of planning board, Plan, Conditions, Regulations.
*Planning Board. Zoning,* Validity of by-law or ordinance, Special permit.

In a civil action brought in the Land Court challenging decisions of the
defendant planning board (board) denying the plaintiff developer a special
permit to proceed with either of two preliminary plans for a subdivision
(locus), and denying approval for definitive plans for the locus, on the
ground that the dead-end road around which the locus was centered exceeded
the maximum length permitted in the board's rules and regulations, the
judge properly granted summary judgment in favor of the board, where the
board, in a prior decision granting conditional approval of a plan for a
subdivision adjacent to the locus, did not extinguish the plaintiff's rights in
an already existing easement across a way in that subdivision, but merely
limited the easement by the conditions set forth in the approval, and the
plaintiff agreed to that modification, which restricted the plaintiff from
creating through-road access for the dead-end road [849-851]; and where
the board's refusal to waive its limitation on the length of the dead-end
road was not an abuse of its discretion [851-852].

A Land Court judge properly concluded that a town's zoning by-law, which
required a developer of a major residential development to apply for a
special permit from the town's planning board (board) rather than directly
submit a subdivision plan to the board for its consideration, was invalid
and could not be enforced, where the by-law and the power it gave to the
board to reject plans in total compliance with applicable laws and regula-
tions presented a facial conflict with G. L. c. 41, § 81M, the subdivision
control law. [852-855]

This court declined to consider a particular argument where the parties had
withdrawn their appeal on that issue. [855]

CIVIL ACTIONS commenced in the Land Court Department on

[1]Town of Westwood.

[2]Both companion cases involve the same parties.

June 20, 2005; October 28, 2005; and December 1, 2005, respectively.

After consolidation, the cases were heard by *Alexander H. Sands*, J., on a motion for summary judgment.

*Donald R. Pinto, Jr.*, for the plaintiff.

*Thomas P. McCusker, Jr.*, for the defendants.

ARMSTRONG, J. The plaintiff, owner of a twenty-acre parcel of land (locus) in the town of Westwood (town), appeals from a judgment of the Land Court affirming three decisions of the town's planning board (board). The first of the board's decisions denied the plaintiff a special permit under the "Major Residential Development" section of the town's zoning by-law to proceed with either of two preliminary plans appended to its special permit application for the Morgan Farm Estates subdivision. The second and third board decisions denied approval for, respectively, a nine-lot definitive subdivision plan and a three-lot definitive subdivision plan for Morgan Farm Estates, each on the ground that the road around which the subdivision was centered exceeded in length the 500-foot maximum for a dead-end street provided in the board's rules and regulations.

On appeal, the plaintiff claims that the board's conditions in approving a subdivision adjacent to the locus could not validly diminish its rights in an already existing easement across a way in that subdivision; and, further, that the board's refusal to approve the Morgan Farm Estates subdivision was analogous to the denial of the landowner's subdivision application found to be an abuse of discretion in *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. 831 (2002). The defendants cross-appealed from so much of the Land Court judge's decision and judgment as struck down two provisions of the town's zoning by-law, relative, respectively, to the layout of subdivision ways[3] and the town's major residential development special permit procedure, on the ground that the provisions were in conflict with sections of the subdivision control law, G. L. c. 41, §§ 81K-81GG, and the uniformity provisions of the zoning enabling act, G. L. c. 40A, § 4.

1. *Background.* a. *Powissett Estates subdivision.* Omitting

---

[3]The appeal as to the ruling on this provision has effectively been withdrawn. See part 2.b.ii, *infra*.

extensive details not relevant to an understanding of the issues on appeal, the facts may be stated as follows: Immediately to the north of the locus is a ten-lot, twenty-two acre subdivision called Powissett Estates, the history of which is interwoven with the plaintiff's development plans for the locus. Powissett Estates, like the locus, is positioned generally between two public roads serving through traffic, Dover Road on the north, and Woodland Road on the east. Neither has frontage on Dover Road, but the locus has frontage where the Powissett Estates property begins, on Morgan Farm Road, a 500-foot dead-end public way that runs south from Dover Road and ends in a cul-de-sac. The Powissett Estates subdivision has frontage on Woodland Road, sufficient to run a road from it into the Powissett Estates subdivision. The key to securing board approval for the Powissett Estates subdivision lay in connecting it on the west end to Morgan Farm Road, so as to gain access to Dover Road. In simplified rendition, this resulted in a planned deal in 1997 under which the plaintiff's predecessor in title, one Frusztajer, agreed to grant to the Powissett Estates developers a right of way across the locus to reach Morgan Farm Road, and the Powissett Estates developers were to grant to Frusztajer a right of way connecting Frusztajer's planned (but not yet proposed) subdivision road into the locus with the Powissett Estates subdivision roads to the north. That particular agreement was never carried out.

In October, 1998, after considerable negotiation with the Powissett Estates developers, the board approved a definitive subdivision plan for Powissett Estates. Desirous of not disrupting traffic patterns, particularly on the quiet Woodland Road side of the subdivision, the board declined to approve a Powissett Estates subdivision road linking Morgan Farm Road on the west to Woodland Road on the east. Instead, the approved plan showed two roads ending in culs de sac, one, Road A, coming into the subdivision from Morgan Farm Road, and the other, Road B, coming into the subdivision from Woodland Road. Road A was to be 667 feet in length, measured from Morgan Farm Road (1,167 feet measured from Dover Road),[4] and Road B was to be 532 feet in length. To alleviate the access concerns

[4]Morgan Farm Road is itself a dead-end street, so the length of it and

implicit in long dead-end roads, see *Wheatley* v. *Planning Bd. of Hingham,* 7 Mass. App. Ct. 435, 451 (1978), *S.C.,* 10 Mass. App. Ct. 884 (1980), the plan provided for a 200-foot right of way (connector ROW) linking the Road A and Road B culs de sac, for use by emergency vehicles. The plan specified that the connector ROW was to be paved to a width of twelve feet. In addition, the plan showing the schematics of the Powissett Estates subdivision showed a right of way coming north from the border of the locus and culminating at Road A.

On July 12, 2000, Frusztajer conveyed the locus to the plaintiff, and in November and December, 2000, the plaintiff and the Powissett developers exchanged deeds, the plaintiff's granting a short easement through the locus to connect the western end of Road A to Morgan Farm Road, and the Powissett Estates developers' deed granting the plaintiff an easement (easement ROW) to connect the anticipated Morgan Farm Estates subdivision road within the locus to the Powissett Estates roads to the north. The deed creating the easement ROW stated that the grantor (i.e., Powissett Estates) understood that the grantee (i.e., the plaintiff) intended to subdivide the locus and agreed that the "design and construction of the [Powissett Estates] Subdivision roads, and the connect[or] Right of Way shall be such that any vehicles that can use the public streets in the Town of Westwood can use the Subdivision Roads and [c]onnect[or] Right of Way."

The board's October, 1998, approval of the Powissett Estates subdivision plan was conditioned, however, on obtaining approval from the conservation commission, not a perfunctory concern because the Powissett Estates acreage had extensive wetlands in the central portion in the vicinity of the connector ROW and the easterly reach of Road A. In fact, the conservation commission process resulted in major modifications to the approved plan, involving the loss of two building lots, the reconfiguration of others, and a significant reduction in the length of Road A (from 667 feet to 235 feet, measured from Morgan Farm Road) with a corresponding increase in the length of the connector

Road A combined represented a 1,167-foot dead-end street measured from Dover Road, a deviation of 667 feet from the 500-foot maximum specified in the board's rules and regulations.

ROW (from 200 feet to 632 feet). A side effect was that the plaintiff's easement ROW positioned as shown on the approved plan now would link not to Road A but to the connector ROW.

Based on these changes, the board on May 7, 2001, issued a modification order, supplementing the Powissett Estates plan approved in 1998. The modified plan, in addition to including the changes mentioned, specified that the 632-foot connector ROW, which was still to be paved to a width of twelve feet, was for the use of emergency vehicles "only," and of bicyclists and pedestrians; that it was to be posted at both ends to prohibit ordinary vehicular traffic; and that the restrictions were to be enforced both by the parties and the town. The modified plan was consented to by the Powissett Estates developers, one of whom was the plaintiff.[5]

b. *Morgan Farm Estates subdivision.* Under § 8.5 of the town's zoning by-law,[6] entitled "Major Residential Development," a landowner seeking a subdivision into four or more house lots is required to file a special permit application accompanied (in outline or in preliminary subdivision plan form) by two plans, one "conventional," showing complete compliance with all board rules and regulations and with the known requirements of the board of health and the conservation commission, and the other an "alternative" plan differing "substantially" from the conventional plan in various ways suggested in the by-law. On October 26, 2004, the plaintiff filed an application for a special permit for Morgan Farm Estates accompanied by the required two plans. The conventional plan showed a ten-lot subdivision of the locus with primary access from Morgan Farm Road and secondary access from the easement ROW to the connector ROW and the roads of the Powissett Estates subdivision. The alternative plan showed a five-lot subdivision with access to four lots from an extension of Morgan Farm Road and access to the fifth lot coming from the easement ROW and the connector ROW.

---

[5]The plaintiff's principal, Louis Petrozzi, signed the modification plan on behalf of the plaintiff. The plaintiff was required to be an applicant for the Powissett Estates subdivision plan because it owned a part of the land included therein, namely, the strip of land which Road A crossed to reach Morgan Farm Road.

[6]The validity of this by-law section is discussed in part 2.b.i, *infra.*

On May 31, 2005, the board denied the requested special permit on the ground that a legal precondition of such a permit was lacking because the so-called conventional plan did not in fact comply with the town's rules and regulations governing the subdivision of land (board's rules and regulations) in that it required waiver of the regulation limiting dead-end roads to a maximum of 500 feet. Since there was no complying conventional plan, the alternative plan was not separately considered. The plaintiff appealed the denial to the Land Court. In quick succession the plaintiff filed two more definitive plans for approval, one (Morgan Farm Estates Subdivision Plan II) showing a nine-lot subdivision with access from a Morgan Farm Road extension and from the easement ROW, the connector ROW, and the Powissett Estates subdivision Road B; and the other (Morgan Farm Estates Subdivision Plan III) consisting of only three lots built around a 310-foot extension from Morgan Farm Road, with no connection to the easement ROW.[7] Those plans were both denied, and appeals followed. The three appeals were consolidated in the Land Court.

2. *Discussion.* a. *Plaintiff's appeal.* It should be evident from what has been said above that the plaintiff is in a highly disadvantageous position to launch a subdivision of the locus. The policy of the town, as reflected in the major residential development by-law, is not to consider a larger (four or more houses) subdivision that cannot comply with all the board's rules and regulations.[8] The plaintiff, whose property (except for a narrow strip) starts at the end of Morgan Farm Road, a 500-foot dead-end way, cannot build even a short subdivision road that is itself a dead-end road without a waiver. Its bargained-for hope to resolve the dilemma by linking its subdivision road to the Powissett Estates subdivision roads was thwarted by the board's unwillingness to allow a through-road access to Woodland Road. (The access the Powissett Estates roads might have provided to

---

[7]The plan numbers II and III reflect the fact that there had been a Morgan Farm Estates Subdivision Plan I filed in 1998 that was denied for want of showing secondary access to a constructed road to allow for compliance with subdivision road standards and provisions for municipal services. The denial was appealed but the appeal was later withdrawn. Plan I is not before us.

[8]According to an affidavit filed by the town planner, this has been the policy of the board since 1996.

Morgan Farm Road when its easement ROW linked to Road A could not by itself have availed the plaintiff, because the loop thereby created would still be a dead-end road.)[9]

The plaintiff argues it is entitled to break the horns of this dilemma in two ways. First, it argues that the board was without power to deprive it of the full use of its easement (by restricting use of the connector ROW to emergency vehicles). It cites familiar law that an "easement can be extinguished only by grant, release, abandonment, estoppel or prescription." *Emery* v. *Crowley*, 371 Mass. 489, 495 (1976). There are several answers. One, given by the judge, is that the easement has not been extinguished but merely limited in its use by the conditions set out in the modified Powissett Estates plan. A second is that the modification decision was in effect a consent judgment, agreed to by all parties to the Powissett Estates development, one of which was the plaintiff, together with the conservation commission, the board, and the town.

The plaintiff sought to preserve its rights under the easement by subscribing in the articles of association of the Powissett Estates homeowners' association (articles of association) that it did not, by agreeing to the Powissett Estates modification plan, intend to waive its rights under the easement. Whether that was a consent or not may be debatable, but if it was not, the plaintiff had a right to appeal any condition it objected to in the approval of the modified Powissett Estates plan. On a more abstract level the contention simply proves too much. The rights of an easement holder to the full benefit of its easement can rise no higher than the right of a fee holder to the full benefit of its land; yet even the latter is subject, in the context of subdivision control, to the supervening power of a planning board to refuse to approve a subdivision plan that will disrupt the standards for orderly growth of the community expressed in its rules and regulations, the subdivision control law, and other applicable constraints, such as zoning laws, regulating growth. See G. L. c. 41, §§ 81M & 81Q.

---

[9]Section IV.A.4.a of the board's rules and regulations states, "[t]he term 'Dead-end street' shall include, without limitation, any street with only a single access onto an existing through street." Two points of access onto Morgan Farm Road do not qualify because it is a dead-end road with only a single point of access onto a through street (Dover Road).

See also *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 701 (1996). It was not an abuse of power for the board to factor into its consideration of the Powissett Estates subdivision planning process the desirability of avoiding a new through road that would spill not only subdivision traffic but through traffic into the quiet Woodland Road neighborhood.[10] The Powissett Estates developers, who included the plaintiff's predecessor in title, agreed to the resulting two culs de sac solution, which found expression in 1998 in the Powissett Estates subdivision plan approval — a plan that also sought to have minimal impact on wetlands in the area of the minimally paved connector ROW.

The plaintiff's second argument is that the facts of this case are substantially identical to, and the result controlled by, *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. 831, 837-839 (2002), in which we affirmed the decision of a Land Court judge that the planning board's refusal to waive the 500-foot limitation on the length of a dead-end street was on the facts of that case an abuse of discretion. In the *Musto* case, two adjacent landowners were each proposing nine-lot subdivisions, using a road connection between the two subdivisions to avoid the dead-end street length problem. *Id.* at 832. Their preliminary plans were approved by the planning board, subject to a condition that they eliminate the through-road connection between the two sub-divisions in favor of a dead-end street-length waiver. *Id.* at 833. The Mustos' adjacent landowner secured approval of its defini-tive plan by agreeing to a condition that it would not allow a through-road connection with the Musto subdivision. *Ibid.* The planning board then denied a similar waiver to the Mustos. *Id.* at 834-835. The planning board's purpose all along, the judge found, had been to force the Mustos to reduce the number of house lots in their subdivision below the number the zoning by-law allowed them. *Id.* at 835.

The plaintiff analogizes the planning board's inducement to the developers in *Musto* to eliminate the road connection to the board's suggestion in denying the Morgan Farm Estates Sub-division Plan I (see note 7, *supra*) that a reason for denial was

[10]Under both the original and modified Powissett Estates plans, Road B and its cul-de-sac were to provide access to only five house lots, including an existing house.

the failure of the plan to show a secondary access to Road A by a way that met subdivision standards. Having given that reason, the board then made such an access useless by forbidding through traffic between Road A and Road B in the conditions it imposed in the modified Powissett Estates subdivision plan.

The situations are not analogous. The board in this case never conditionally approved a preliminary plan for the Morgan Farm Estates development. The limitations on the use of the connector ROW, although made more explicit and detailed in the modified Powissett Estates plan, were clearly present in the original Powissett Estates subdivision decision, the central concept of which was to avoid the creation of a through road funneling into Woodland Road by requiring instead the two culs de sac layout. The purpose of the connector ROW was stated to be emergency vehicle access, and the limitation of the use of Road B for the five houses fronting thereon (see note 10, *supra*) was expressly stated. The original Powissett Estates decision came down October 27, 1998, two years before the plaintiff executed the transfers that created the easement ROW with the Powissett Estates developers. And, most important, missing from this case is anything analogous to the judge's finding in *Musto* that the planning board was exercising its powers with an ulterior motive.[11]

b. *Defendants' cross appeal. i. Validity of § 8.5 of the by-law.* The defendants' cross appeal urges us to reverse the judge's ruling and declaration that § 8.5 of the town's zoning by-law is in conflict with the uniformity requirement of G. L. c. 40A, § 4, and is therefore invalid.[12] Section 8.5, as stated above, requires a special permit from the planning board as a condition of

---

[11]There is no need to discuss separately the appeal from the denial of Morgan Farm Estates Subdivision Plan III. That three-lot subdivision plan was not subject to the major residential development by-law and did not involve a connection with the roads of the Powissett Estates development. Rather, it was a simple case of a subdivision depending on a waiver of the 500-foot dead-end road length limitation. The denial was not erroneous. The case is controlled by the familiar line of cases holding that a planning board may generally deny an applicant's request for a waiver of its rules and regulations. See, e.g., *Miles* v. *Planning Bd. of Millbury,* 404 Mass. 489, 490 n.4 (1989); *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. 79, 85-86 (1976); *Musto* v. *Planning Bd. of Medfield,* 54 Mass. App. Ct. at 837.

[12]The by-law not altogether clearly defines a major residential development as "the division or subdivision for residential purposes of any parcel of land

submitting for its consideration a subdivision plan of a major residential development. A developer proposing a major residential development may not submit a plan to the board directly for its consideration. Rather, it must apply for a special permit accompanied by two plans: one, the "conventional plan," showing complete compliance "with all zoning and subdivision regulations and to the extent possible at the time of application, health regulations, wetlands regulations and other applicable [F]ederal, [S]tate and local requirements"; and the other, the "alternative plan," that "differs substantially from the . . . [c]onventional [p]lan." Examples of differences suggested include "the use of the alternative dimensional regulations set forth herein, or a plan of the same type but having major differences in the number of lots created, road pattern or open space configuration." The board "may approve or approve with conditions a special permit for a [major residential development], whichever plan, the [c]onventional [p]lan or [a]lternative [p]lan, best promotes the objectives" of the by-law. These are "to allow greater flexibility and creativity in residential development and to assure a public voice and public authority in consideration of development in order to gain" better siting of buildings, better protection of land not

---

or set of contiguous parcels of land which were in common ownership as of July 1, 1998, which would cumulatively result in one or more of the following, unless each resulting lot has lot area, lot frontage and lot width at least fifty (50) percent greater than that required by . . . [the] Table of Dimensional Requirements:

> "8.5.2.1 Development of four (4) or more dwelling units on a single lot . . . ;

> "8.5.2.2 An increase by ten (10) or more lots (excluding any restricted from residential use) above the number existing there two (2) years earlier;

> "8.5.2.3 Creation of four (4) or more lots with individual driveway egress onto a street existing at the time of lot creation unless [the plan requires any driveway to be 600 or more feet from any other such driveway];

> "8.5.2.4 Creation of four (4) or more lots unless, through lot locations or restrictions to be recorded on the plan creating the lots, no more than three (3) of the lots contain a potential site for construction of a dwelling any part of which would be less than two hundred (200) feet from a street existing at the time of the creation of such lot."

suited for development, permanent preservation of open space for conservation or recreational use, wetlands protection, preservation of scenic vistas, street appearance, and other objectives.

The judge saw § 8.5 and its broad grant of discretionary authority to the board as a violation of the uniformity requirement of G. L. c. 40A, § 4, added by St. 1975, c. 808, § 3, which requires that a zoning ordinance should operate "uniform[ly] within the district for each class or kind of structures or uses permitted." See *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 107 (1984). *SCIT, Inc.* held invalid a zoning provision that required a special permit for any use permitted in a business district. *Id.* at 106-111. "[A] use allowed as of right cannot be made subject to the grant of a special permit inasmuch as the concepts of a use as of right and a use dependant on discretion are mutually exclusive." *Prudential Ins. Co. of Am.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278, 281 (1986). In our view the by-law and the power it gives to the board to reject so called "conventional plans" (i.e., plans in total compliance with applicable laws and regulations) may be more easily seen as presenting a facial conflict with the subdivision control law, specifically with G. L. c. 41, § 81M, as amended by St. 1957, c. 265:

> "It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if such plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to the subdivisions of land . . . ."

See *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163-164 (1959) (legislative history of subdivision control law "gives no indication that planning boards were to have freedom to disapprove plans which comply with applicable standards merely because the board feels general public considerations make such action desirable"); *Beale* v. *Planning Bd. of Rockland*, 423 Mass. at 695-697 (discussing generally authority of planning board to reject subdivision only for violations of board's rules and regulations, zoning by-law, subdivision control law, or recommendations of the board of health).

The judge, in our view, acted correctly in ruling that § 8.5 of

the town's zoning by-law is invalid and cannot be enforced, although we locate the source of its invalidity in the conflict with the subdivision control law.[13]

ii. *Validity of § 5.5.6 of the by-law.* The judge ruled and declared that the purported regulation of subdivision ways in § 5.5.6 of the zoning by-law[14] is preempted by the board's rules and regulations, duly promulgated under G. L. c. 41, §§ 81M and 81Q. The board and the town cross-appealed from this portion of the judgment. In this court, however, they concede that the judge was correct in declaring § 5.5.6 invalid; thus, no party to the appeal is arguing for the validity of the by-law. We treat this action of the town and the board as tantamount to the withdrawal of the appeal from this portion of the judgment. Accordingly, we shall not consider its correctness.

3. *Conclusion.* The portion of the judgment relative to the validity of § 5.5.6 of the town's zoning by-law is not before us, the appeal therefrom having been waived. The portion of the judgment relative to the validity of § 8.5 of the town's zoning by-law is modified by striking the words, "violates the uniformity requirement of G. L. c. 40A, § 4," and substituting therefor the words "violates G. L. c. 41, § 81M." The balance of the judgment is affirmed.

*So ordered.*

---

[13]We add in passing that § 8.5 may be invalid for another reason. General Laws c. 41, § 81O (relative to subdivision plans), and § 81P (relative to divisions of land that qualify for endorsement that approval is not needed [these are also covered by § 8.5 of the by-law]), implicitly give landowners and developers the right to put such plans before a planning board for consideration and appropriate action. We doubt the authority of a town, through its zoning by-law, to condition such submissions on prior authorization by special permit. We do not make this consideration a ground for our decision because it has not been argued by the parties.

[14]Section 5.5.6 of the zoning by-law purports to protect preexisting lots from the impact of new roads created by subdivisions by requiring a forty-foot buffer zone to be left between the new road and a lot line of any preexisting lots except within forty feet of the new road's connection to a preexisting street.