DOUGLAS A. WINE & another[1] *vs.* PLANNING BOARD OF
NEWBURYPORT.

No. 06-P-1950.

Essex. March 4, 2008. - June 29, 2009.

Present: RAPOZA, C.J., PERRETTA, & VUONO, JJ.

*Subdivision Control,* Plan, Approval of plan. *Way,* Private.

In a civil action challenging the denial by a city's planning board (board) of
the plaintiffs' application for approval of a subdivision plan, the plaintiffs
failed to meet their burden of showing that their plan did not violate the
terms of earlier-approved covenants with the board, so as to exempt their
plan from the city's centerline offset requirement, with which the plan did
not comply [524-526]; further, the plaintiffs did not sustain their burden of
showing that the board's denial of the waiver was based upon considerations
other than those imposed by G. L. c. 41, § 81R (i.e., ensuring that any
grant of a waiver would be based on the public interest and would be
consistent with the intent and purpose of the board's own rules and regula-
tions) [526-529].
This court declined to reach an issue not necessary to its review of a local
planning board's denial of a proposed subdivision plan. [529-530]

CIVIL ACTION commenced in the Superior Court Department on
October 30, 2002.

The case was heard by *Elizabeth M. Fahey,* J.

*Douglas A. Wine,* pro se.

*Jonathan M. Silverstein* for the defendant.

*Debra Esteves Wine,* pro se, was present but did not argue.

PERRETTA, J. This appeal brings before us issues concerning
the denial by the planning board (board) of Newburyport (city)
of the application for approval of a subdivision plan submitted
to the board in 2002 by the plaintiffs (applicants). The basis for
the board's denial was its determination that the intersection of
the proposed private way leading to High Street, a public way,

[1]Debra Esteves Wine.

violated the city's centerline offset requirement (offset requirement)[2] and that a waiver of that requirement should not be granted. On the applicants' appeal to the Superior Court pursuant to G. L. c. 41, § 81BB, the judge, sitting jury-waived, ordered entry of judgment for the board. On their appeal from that judgment, the applicants argue that the judge was in error in finding and concluding that approval of their plan required a waiver of the offset requirement and, in the alternative, that if approval of their plan did require a waiver, the judge erred in ruling that the board's denial of the waiver was proper. We affirm the judgment.

1. *The facts.* As established by the documentary and testimonial evidence before us, the applicants' property is known and numbered as 223 High Street. Prior to 1980, the locus was part of a larger parcel of land owned by Virginia Hamilton (Hamilton land). Subsequent to Hamilton's death, the Hamilton land was conveyed on August 26, 1981, to J. Normand and Diane Jutras subject to the condition that "[a]ny development of said premises shall be designed in such a manner as to protect the natural setting and no more than four dwellings are to be constructed thereon." A few days later, the Jutrases conveyed the land to the Jutras Family Trust (Jutras).

Jutras thereafter submitted a definitive subdivision plan (the 1982 plan) prepared by Paul Turbide of Port Engineering Associates, Inc. The 1982 plan called for the division of the Hamilton land into three lots, two of which were required to be accessed from High Street. As designated on the proposed 1982 plan, the two lots to be accessed from High Street were Lot 2A and the lot labeled as "N/F Diane C. Jutras" (the Jutras lot). The third lot, Lot 2B, eventually became the applicants' property.

According to the 1982 plan, the only access to Lot 2B from High Street would be by a proposed private way off High Street. At the time of Jutras's submission of the plan to the board, the private way did not satisfy the city's then-existing offset requirement of 125 feet. To gain the board's approval of a waiver of the offset requirement as it related to the private way, Jutras agreed to certain conditions, which were recorded as covenants at the

---

[2] "Centerline offset" refers to the distance between the centerlines of two streets intersecting a public way at different points. The centerline offset requirement ensures safe access and egress to lots within a subdivision.

Essex County registry of deeds with reference to the 1982 plan. G. L. c. 41, § 81R.

The conditions imposed by the board required that dwellings on Lot 2A and the Jutras lot remain single-family dwellings and front on High Street, and that any further subdivision of the land comply with the city's subdivision rules and regulations. Turbide testified in the Superior Court that the purpose of the first condition was to ensure that only one lot, Lot 2B, would derive access from the private way while the other two lots would be accessed directly from High Street.

Lot 2B was purchased by the applicants in November of 1991; prior to that time, a dwelling had been constructed on Lot 2A, which, contrary to the conditions for approval of the 1982 plan, does not front on High Street. The private way shown on the 1982 plan has never been built. Instead, both the applicants' Lot 2B and Lot 2A gain access to High Street from a gravel driveway that coincides in small part with the private way shown on the 1982 plan.

On June 3, 2002, the applicants filed an application for definitive subdivision approval of a plan (the 2002 plan) to subdivide Lot 2B into three lots.[3] Their requested subdivision would increase the number of lots utilizing the private way to four, that is, Lot 2A and the three lots to be created by the subdivision of Lot 2B. As of December 9, 1998, § 6.8.9 of the board's rules and regulations governing the subdivision of land (rules and regulations) required the offset to be a minimum of 150 feet.

The centerline of the private way at the point of its intersection with High Street, measured perpendicularly, is less than 150 feet from the centerline of Kent Street where it intersects with High Street to the east of the applicants' property.[4] Con-

---

[3]Prior to filing the 2002 plan, the applicants had submitted a request for preliminary subdivision approval upon which the board took no action. Submission of a preliminary plan for a residential development is not required. See G. L. c. 41, § 81S. However, an applicant might wish to submit a preliminary plan to test a planning board's reaction. See Eno & Hovey, Real Estate Law § 24.11 (4th ed. 2004). Approval or disapproval of a preliminary subdivision plan has no legal consequence "beyond freezing zoning requirements for a definitive plan." *Id.* at § 24.10 n.2, at 678-679. Should an applicant submit a preliminary subdivision plan and within seven months thereafter seek definitive subdivision approval, the zoning laws in effect at the time of the filing of the preliminary plan will control. See G. L. c. 40A, § 6.

[4]One hundred and six feet is the offset number stated in the judge's findings

sequently, the applicants needed to obtain a waiver of the offset requirement for approval of their definitive subdivision plan.

Turbide assisted the applicants in preparing their preliminary plan. In so doing, he identified seven minor waivers that would be necessary for approval of the proposed subdivision. However, as the board informed him, he failed to identify the need for a waiver of the offset requirement for the private way necessary for approval of the subdivision.

When the applicants thereafter submitted an application for approval of a definitive plan, again prepared with Turbide's assistance, the board held meetings on July 17, 2002, and October 9, 2002, for the purpose of discussing and considering the applicants' plan. Two days later, on October 11, 2002, the board unanimously voted to deny the application for approval of the plan and so notified the applicants. The board's disapproval of the plan was based upon its determination that the plan failed to depict compliance with § 6.8.9 of its rules and regulations pertaining to centerline offset requirements. As also determined by the board, a waiver of the offset requirement was "not in the public interest, or consistent with the intent and purpose of the subdivision control law."

After a jury-waived trial during which the judge took a view of various properties as they related to the offset requirement and traffic concerns, the judge found and concluded that the applicants were required to obtain a waiver of the offset requirement before obtaining the board's approval of their definitive subdivision plan and that the board did not abuse its discretion in denying the applicants' request for the required waiver.

2. *Discussion.* In reviewing the board's disapproval of the applicants' subdivision plan and the denial of their request for a waiver of the offset requirement, the judge and we are "confined to the reasons for disapproval of the subdivision plan stated by the planning board." *Musto* v. *Planning Bd. of Medfield,* 54 Mass. App. Ct. 831, 836 (2002), quoting from *Broken Stone Co.* v. *Planning Bd. of Weston,* 45 Mass. App. Ct. 738, 742 (1998). On the applicants' appeal pursuant to G. L. c. 41, § 81BB, the

of fact. In their briefs, the applicants and the board also cite numbers that are less than the offset requirement of 150 feet as set out in the board's applicable rules and regulations.

judge was required "to conduct a hearing de novo, find the relevant facts, and . . . determine the validity of the board's decision." *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 173 (1977). It was the applicants' burden to show that the board had acted improperly in disapproving their subdivision plan. Compare *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. 545, 548 (1975) (burden of proof on party alleging subdivision improperly approved). Based upon our review of the materials before us and for the reasons set out below, we conclude that the judge correctly determined that the applicants had failed to meet their burden of showing that the board abused its discretion in denying them a waiver of the offset requirement and approval of their subdivision plan. See *Loring Hills Developers Trust* v. *Planning Bd. of Salem*, 374 Mass. 343, 352 (1978) (single reason supporting denial of approval sufficient to uphold board's decision).

a. *The waiver requirement.* According to the applicants, approval of their subdivision plan was not dependent upon a waiver of the centerline offset requirement. They argue that because the private way had been approved previously under the 1982 plan, they needed no further approval under their 2002 plan.

As previously stated, the applicants' property includes Lot 2B and the private way from the 1982 plan. Although the private way did not meet the centerline offset requirement, the board waived that requirement and approved the 1982 plan on the specific condition that any further subdivision of the land comply with future rules and regulations of the board. That condition and others to which Jutras agreed were recorded as covenants at the Essex County registry of deeds with reference to the 1982 plan. See G. L. c. 41, § 81R.

The judge found that the applicants' 2002 subdivision plan reflected at least one change to the private way. Both the applicants and the board acknowledge that the 2002 proposed plan reflects a change in the location of the cul-de-sac. However, the point at which the private way fronts on High Street remained intact.[5] More significant, however, is the fact that the applicants'

---

[5]Our reading of the drawings prepared by Port Engineering Associates, Inc., depicting the applicants' proposed subdivision plan shows an existing gravel driveway. The drawings also depict an "existing private way" that has never been built.

2002 plan would violate the recorded covenants made in gaining board approval of the 1982 plan by allowing four lots rather than one to front on the way depicted in the 2002 plan.

It was the board's obligation to ensure that all aspects of the applicants' proposed 2002 subdivision plan were in compliance with the 1998 rules and regulations, particularly in light of the 1982 covenant between the board and Jutras requiring compliance with controlling board rules and regulations pertaining to any further subdivision of the land. Because the applicants failed to sustain their burden, compare *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. at 548, of showing that their proposed subdivision did not violate the terms of the 1982 covenants concerning their land, we conclude that it was necessary for them to obtain a waiver of the board's 1998 rules and regulations with which the plan failed to comply. Taken together, the covenants meant that the 1982 waiver from the offset requirement was limited to a subdivision wherein only one lot would gain access to High Street by means of the private way. While the applicants might be able to rely on the 1982 waiver to finally construct the private way shown on the 1982 plan (a question not presented to us, and which we need not decide), it does not entitle them to expand the three-lot subdivision approved in 1982 to a five-lot subdivision, as proposed on the 2002 plan.

b. *The board's denial of the waiver.* We review the board's decision to deny the applicants a waiver of the offset requirement while keeping in mind that its decision "cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary," *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970), and that a planning board may grant a waiver "where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law."[6] G. L. c. 41, § 81R.

---

[6]The purpose of the subdivision control law is set out in G. L. c. 41, § 81M, inserted by St. 1953, c. 674, § 7, which reads in applicable part:

"The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways . . . ."

Section 81R provides planning boards with a considerable amount of discretion in determining whether to require or to waive strict compliance with their rules and regulations.[7] See *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 85-86 (1976). Moreover, a board is not required to make findings in support of its discretionary decision to waive regulations. *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 808 (1981). However, § 81R requires that the court consider two factors in determining whether a board's grant of a waiver was an appropriate exercise of discretion. *Id.* at 808-809.

The first factor concerns consideration of the board's duty to ensure that the grant of a waiver is in the "public interest." As stated in *Arrigo* v. *Planning Bd. of Franklin, supra* at 809:

> "If, in a given case, [the board's decision] is one as to which reasonable minds might in good faith differ, without doubting the reasonableness of the opposing view, the conclusion reached by the planning board should be sustained on judicial review."

Because § 81R delegates authority to planning boards, the only question left to this court is whether the board exceeded its authority in denying the applicants a waiver of the offset requirement. The applicants' burden to show that the board's refusal to grant them a waiver of that requirement on the basis that it was not in the public interest to do so is a burden that has been described as "nearly insupportable." *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. App. Ct. 650, 657 (1988).

---

[7]General Laws c. 41, § 81R, provides:

"A planning board may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations, and with the frontage or access requirements specified in said law, and may, where the ways are not otherwise deemed adequate, approve a plan on conditions limiting the lots upon which buildings may be erected and the number of buildings that may be erected on particular lots and the length of time for which particular buildings may be maintained without further consent by the planning board to the access provided. The planning board shall endorse such conditions on the plan to which they relate, or set them forth in a separate instrument attached thereto to which reference is made on such plan and which shall for the purpose of the subdivision control law be deemed to be a part of the plan."

The second factor to be considered under § 81R is whether a waiver would be inconsistent with the intent and purpose of the subdivision control law. Our standard of review on this point is "more exacting." *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. at 809. Here the waiver of a regulation will be upheld as proper unless the inconsistency promoted by the waiver is determined to be substantial. See *ibid.* For example, we have held that a board abused its discretion in waiving a regulation requiring the "owner of record" of the land to sign the subdivision plan and be present at the board's hearings on the plan. See *Batchelder* v. *Planning Bd. of Yarmouth*, 31 Mass. App. Ct. 104, 108-109 (1991). Although courts in some instances have held that a planning board abused its discretion in granting a waiver of its rules and regulations, it is a rare occurrence for a court to disturb a board's discretionary decision to deny a waiver of compliance based upon its strict adherence to its rules and regulations. See *McLaughlin* v. *Selectmen of Amherst*, 38 Mass. App. Ct. 162, 171 (1995), *S.C.*, 422 Mass. 359 (1996) ("[w]e are aware of no reported case or other authority that orders or requires a board to grant a discretionary waiver").

To overturn the board's denial of the applicants' request for a waiver of the centerline offset requirement would also require us to conclude that the granting of a waiver would not have been inconsistent with the intent and purpose of the subdivision control law. Compare *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. at 808-809. *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. at 836, 838-839, presents a rare example of a judicial determination that a board abused its discretion in denying a request for a waiver on this basis. Our decision there was based upon evidence showing that no safety implications were in fact raised by the proposed waiver of the limitation of dead-end roads to 500 feet, that similar waivers had been granted in the past, and that the board acted in bad faith in attempting to limit the number of lots in the proposed subdivision to fewer than were otherwise permissible.

The applicants in the case before us presented no such compelling evidence; we cannot say that it was unreasonable for the board to find that the grant of a waiver would be inconsistent with the intent and purpose of the subdivision control law. See G. L. c. 41, § 81M; note 6, *supra.*

As established on the materials before us, which include the judge's observations made during a view of the streets in question on a weekday at about 9:30 A.M., High Street and Kent Street, both of which are major and extremely well-traveled city streets, intersect very near to where the private way would front on High Street. Moreover, evidence of the fact that board members may have inquired about the applicants' plans for future development of their property falls far short of constituting sufficient evidence to show that the requested waiver was denied on the basis of evidence comparable to that found by the court in *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. at 839.

It is for these reasons that we conclude on the materials before us that it cannot be said that the applicants have sustained their burden of showing that the board's denial of a waiver of the centerline offset requirement was based upon considerations other than those imposed by G. L. c. 41, § 81R, that is, for purposes of ensuring that any grant of a waiver would be made based on the public interest and consistent with the intent and purpose of the board's own rules and regulations. Contrast *Musto* v. *Planning Bd. of Medfield*, *supra* at 838-839.

c. *The Hamilton deed.* Whether the applicants' subdivision plan violated the restriction set out in Hamilton's deed to the Jutrases, the applicants' predecessor in title to Lot 2B, became an issue at trial. As earlier recited, the provision in question reads:

> "This conveyance is subject to the following restriction[,] which shall be binding on the grantees, their heirs, administrators and assigns:

> "Any development of said premises shall be designed in such a manner as to protect the natural setting and no more than four dwellings are to be constructed thereon."

It is to be recalled from our previous recital of the facts that if the applicants' subdivision plan were approved by the board, the approved plan would allow for five dwellings on the Hamilton land.

Based on that provision, the judge concluded that no more than four buildings were to be situated on the Hamilton land from 1981 into the future. In so concluding, the judge also

determined that even were one to accept the proposition that the duration of the validity of this condition was limited to thirty years, the applicants would be precluded from approval of their subdivision plan until, at least, 2011. In arriving at these conclusions, the judge opined that her conclusions "may be an appella[te] issue" for either the board or the applicants.

Not surprisingly, both the board and the applicants have addressed the question whether the judge erred in accepting and applying a thirty-year limitation period on the duration of the condition in issue. Although we appreciate the judge's thorough and detailed explanation of the reasons for her ultimate ruling, we have no need to reach this question.[8]

As previously discussed, judicial review of the board's decision is confined to the reasons therein stated. See *Musto* v. *Planning Bd. of Medfield*, 54 Mass. App. Ct. at 836. The record before us establishes that the reason the board denied the applicants' proposed subdivision plan was its failure to comply with the centerline offset requirement set out in the board's 1998 rules and regulations in effect at the time of the submission of the applicants' 2002 subdivision plan.

*Judgment affirmed.*

---

[8]We note, however, that the judge's conclusion finds support in *Brear* v. *Fagan*, 447 Mass. 68, 76-77 (2006), and G. L. c. 184, § 27(*b*).